No. 88,546

STATE OF KANSAS, *Appellee*, v. JOSIAH R. BUNYARD, *Appellant*.

(133 P.3d 14)

Opinion filed April 28, 2006.

*Daniel E. Monnat*, of Monnat & Spurrier, Chartered, of Wichita, argued the cause, and *Paige A. Nichols*, of Lawrence, was with him on the briefs for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Josiah R. Bunyard petitions this court for review of the Court of Appeals' decision affirming his conviction of rape (K.S.A. 2004 Supp. 21-3502[a][1]) in *State v. Bunyard*, 31 Kan. App. 2d 853, 75 P.3d 750 (2003). We granted his petition on three issues: (1) joinder of three rape charges in one complaint, K.S.A. 22-3202(1); (2) an issue of first impression regarding whether it is rape when the initial penetration was consensual but consent was withdrawn and the intercourse continued for a period of time; and (3) prosecutorial misconduct during closing argument. We reverse the decision of the Court of Appeals affirming the district court, reverse the district court, and remand for a new trial.

The defendant was charged with three counts of rape stemming from three separate incidents with acquaintances in 1999, 2000, and 2001. The prosecutor combined all three charges into one information filed on February 5, 2001. The defendant's motion to sever the charges was denied by the district court. He was acquitted of two of the charges but was found guilty of raping E.N. As the defendant was acquitted on two of the charges, the facts of those cases will only be discussed as they relate to the severance issue raised by the defendant on a petition for review.

The defendant was 21 years old when he met E.N. at a pool party at the home of a mutual friend. E.N., who was 17 years old, flirted with the defendant. She thought the defendant was "cool" so she invited him to a party at her friend's house the following night.

The defendant and friends attended the party the next night. After talking with E.N. for awhile, the defendant invited her to watch a movie in his car with another one of his friends. The defendant drove a Chrysler Sebring two-door convertible with a DVD player built in the dash. The defendant put the car's convertible top up before they began watching the movie.

After the defendant's friend left the car, the defendant and E.N. began kissing. E.N. did not object when the defendant removed her clothing. Likewise, she did not object when the defendant removed his clothing and placed a condom on his penis. However, after the defendant laid E.N. back in the seat and penetrated her vagina with his penis, E.N. said, "I don't want to do this." The defendant did not stop, replying, "Just a little bit longer." E.N. again stated that she did not "want to do this," but the defendant did not stop. E.N. testified that she unsuccessfully tried to sit up and roll over on her stomach to get away from the defendant. After 5 or 10 minutes had passed, E.N. began to cry, and the defendant stopped having sexual intercourse with her. The defendant told her she had given him "blue balls," and E.N. declined his request for her to perform oral sex.

The defendant testified that E.N. was on top of him during consensual intercourse and they were talking. E.N. asked him if he wanted a relationship and if he planned on calling her the next day. When the defendant said he was not interested in a relationship, E.N. became upset, got off of him, and told him about how she had been hurt by other guys in the past. E.N. wanted to continue kissing and wanted him to stay in the car and hold her, but the defendant did not stay in the car and told her to get dressed.

E.N. went back into the house visibly upset and told K.B. that she had been taken advantage of, that the defendant had gotten inside of her, and that she had said "no" more than once. M.B. also spoke with E.N., who was crying. M.B. testified that E.N. said, "I was raped. We had sex. I said no." E.N. did not want to report the incident to the police at that time because she did not want her parents to find out that she had been drinking.

Four days later, E.N. reported the incident to the police, and she was examined at the local hospital. The sexual assault examiner

detected a cluster of abrasions consistent with blunt force trauma in E.N.'s vagina. The examiner testified that the location of the abrasions was consistent with mounting injuries. Although consensual sex could not be ruled out, the examiner testified that mounting injuries are more commonly found after nonconsensual sexual intercourse.

The defendant appealed his conviction for one count of rape to the Court of Appeals. In a divided opinion, the majority affirmed the defendant's conviction. Judge Johnson, however, dissented on one of the issues and concluded that the defendant should be given a new trial. We granted the defendant's petition for review. Because we are reversing and remanding for new trial based upon prosecutorial misconduct, we elect only to consider the defendant's arguments regarding the denial of his motion to sever the three rape charges, whether the trial court's referral to the rape jury instruction was sufficient to answer the jury's question concerning whether post-penetration conduct can constitute rape, and whether the prosecutor committed reversible misconduct during closing argument.

## Joinder of Charges

The defendant was tried on three rape charges joined in one complaint: Count I, involving a December 7, 1999, incident with A.P.; Count II, the August 2000 incident involving E.N.; and Count III, a January 2001 incident involving L.B. The defendant was acquitted by the jury on Counts I and III.

The defendant claims that the trial court erred when it repeatedly denied his motions to sever the three rape charges into three separate trials. He argues that he was prejudiced by jury confusion, improper admission of evidence regarding the unrelated charges, and violation of his right to silence. According to the defendant, the jury confusion resulted from the jury's inability to disassociate the evidence for each of the charges and the "smear effect" of showing evidence suggesting the defendant's propensity to commit date rape.

If the charge related to E.N. had been separately tried, the defendant argues that the State could not have admitted evidence of

the other two accusations under K.S.A. 60-455, which precludes the admission of other crimes evidence unless it proves motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The defendant further argues that his right against self-incrimination was violated because he could not testify regarding only one of the charges, like he wanted, without raising a concern about why he did not testify regarding the other charges.

The charging of multiple crimes as separate counts in one complaint is authorized by K.S.A. 22-3202(1), which provides:

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

In *State v. Barksdale*, 266 Kan. 498, 973 P.2d 165 (1999), severance was extensively discussed. We stated, *inter alia*:

"This court has on numerous occasions throughout its history addressed the subject of whether crimes are of the same or similar character so as to permit their joinder. In *State v. Hodges*, 45 Kan. 389, 392, 26 Pac. 676 (1891), we stated: 'Several separate and distinct felonies may be charged in separate counts of one and the same information, where all of the offenses charged are of the same general character, requiring the same mode of trial, the same kind of evidence, and the same kind of punishment. [Citations omitted.] The defendant may be tried upon all the several counts of the information at one and the same time, and in one trial, but all this rests in the sound judicial discretion of the trial court.'

"This standard has been reiterated many times by this court. See *State v. Bagby*, 231 Kan. 176, 178, 642 P.2d 993 (1982); *State v. Gander*, 220 Kan. 88, 90, 551 P.2d 797 (1976); *State v. Brown*, 181 Kan. 375, 381-82, 312 P.2d 832 (1957); *State v. Powell*, 120 Kan. 772, 784, 245 Pac. 128 (1926); *State v. Warner*, 60 Kan. 94, 98, 55 Pac. 342 (1898)." 266 Kan. at 507.

As to appellate review of denial of severance, we have additionally stated:

"Whether a defendant will be tried on all separate charges in a single trial is a matter within the discretion of the trial court, and its decision will not be disturbed on appeal unless there is a *clear* showing of abuse of discretion." (Emphasis added.) *State v. Hill*, 257 Kan. 774, Syl. ¶ 3, 895 P.2d 1238 (1995).

Our research has disclosed only one case where we have reversed a conviction after a trial court denied severance: *State v. Thomas*, 206 Kan. 603, 481 P.2d 964 (1971). In *Thomas*, multiple charges were filed stemming from two unrelated and very different incidents. Arising from one incident, defendant was charged with first-degree murder, robbery, and unlawful possession of a pistol. Charges arising from the second incident were burglary, larceny, three counts of forgery, and three counts of uttering.

The two groups of charges were consolidated for trial. No instruction was given to the jury directing it to consider the evidence as to each case as only applicable to that case.

After determining the two groups of charges were not similar and that the order of consolidation constituted an abuse of discretion, we stated:

"Even though the trial court's order of consolidation is said to be an abuse of discretion, defendant still has the burden of showing prejudice that requires a reversal. Defendant says that since his defense to the murder charge was that the shooting was accidental, he was compelled to take the witness stand to explain the circumstances. As a result, defendant states he was forced to admit the forgery and uttering charges (he denied any participation in the . . . burglary), and thus was put in the position of submitting, as an admitted forger, his defense of accidental shooting in the murder case. He claims this circumstance destroyed any possibility that the jury would give credence to his claim that the shooting of [the victim] was accidental. Whether the jury would have believed defendant's description of the shooting, absent the influence of the forgery admissions by defendant, is not for us to decide. It must be conceded the jury may have been unduly influenced, particularly in the absence of any instruction in this regard." 206 Kan. at 609-10.

We concluded the defendant had carried his burden of proof as to prejudice and ordered new separate trials as to each group of charges.

In our case law prior to *Thomas*, and the 30-plus years since *Thomas*, numerous claims of abuse of judicial discretion relative to joinder or denial of severance have been before Kansas appellate courts. None have been successful.

*State v. Barksdale*, previously cited, involved two unrelated murders that were joined for trial over the defendant's objection. In *Barksdale*, we stated:

"The defendant argues that the two murders were not similar in that (1) the Davis murder carried with it an additional underlying felony of aggravated criminal sodomy that the Forgie murder did not; (2) Davis was a personal friend of the defendant, while Forgie was a stranger; (3) strangulation was the cause of Forgie's death but not the cause of death in the Davis murder; (4) a knife was used in the Forgie murder, not a blunt instrument as used in the Davis murder; and (5) the same evidence was not necessary in order to prove both crimes and with the exception of Joe Campbell, none of the witnesses were the same for both cases.

"The question is whether the trial court's determination that the crimes were similar and, thus, subject to joinder was a decision with which no reasonable person would agree. In both cases, robbery was the motive. The manner in which each victim was killed was substantially similar. Davis was strangled and received a blunt trauma to the head. Forgie was also strangled and received a blunt trauma to the head as well as stab wounds. Although the defendant claims that strangulation was not the method of Davis' actual death, it is clear from the evidence that both victims had been strangled. Blunt trauma could have been the method of both deaths as it was unclear whether Forgie died as the result of strangulation, stab wounds, blunt trauma, or a combination of the three. Both victims were found face down and tied with cords. The two murders were committed within 9 months of one another in the same general neighborhood in Wichita. While it is true that only one witness, Joe Campbell, was common to both cases, it is also true that both cases generally required the same mode of trial and the same kind of evidence, and resulted in the same kind of punishment.

"The facts and nature of the charges in this case are similar to those in other cases where we found joinder to be proper. In [State v.] *Cromwell* [253 Kan. 495, 856 P.2d 1299 (1993)], we found joinder to be proper where both victims were mature women who lived alone and knew the defendant despite the fact that 4 years had passed between the murders. See 253 Kan. at 511. In *State v. Hill*, 257 Kan. 774, 780, 895 P.2d 1238 (1995), we found no abuse of discretion in joining four cases where (1) the incidents occurred in the same neighborhood within a span of around a month; (2) the attacker was similarly dressed in two of the incidents; (3) two of the incidents involved rape, while in the other two incidents the attacker was seen by the victim while he was still some distance away which might have altered his plans; (4) similar items were taken from each residence; and (5) in each case the victims were instructed to roll over on their stomachs and the attacker placed a pillow on their heads. In *Bagby*, we found joinder proper when in each instance aggravated burglary preceded some sexual act such as rape and aggravated sodomy and the victims described the assailant as a black man with a screwdriver or an ice pick. 231 Kan. at 178.

"Under the requirements of K.S.A. 22-3202(1), and our prior case law from *Hodges* to the present, the crimes with which the defendant was charged are not only sufficiently factually similar but also sufficiently similar in mode of trial and

kind of evidence required, as well as punishment prescribed, that we cannot say that no reasonable person would agree with their joinder." 266 Kan. at 508-09.

Barksdale, like the defendant herein, sought to raise the requirements for joinder to the much higher requirements of admission of evidence under K.S.A. 60-455. We rejected this claim, stating:

"Nevertheless, the defendant argues that we should adopt a different test, *viz.*, that joinder for trial of separate offenses may be granted only where the other separate crimes charged and tried in the same trial would be admissible under K.S.A. 60-455 as prior bad acts or crimes. However, this court has not so limited the joinder rule. We have commented that where the evidence of crimes joined for trial would have been admissible under K.S.A. 60-455 in a separate prosecution, the defendant is unable to demonstrate any prejudice when the crimes are tried in a single trial. See *Cromwell*, 253 Kan. at 509-11. At the same time, Kansas case law and the provisions of K.S.A. 22-3202(1) make it clear that joinder is not dependent upon the other crimes being joined meeting the admissibility test set forth in K.S.A. 60-455. See K.S.A. 22-3202(1); *Bagby*, 231 Kan. at 178-79; *Brown*, 181 Kan. at 382-83; [*State v.*] *Toelkes*, 139 Kan. [682,] 684 [, 33 P.2d 317 (1934)].

"While the defendant argues that it was error in this case to allow evidence of each separate homicide because it was inadmissible under K.S.A. 60-455, and because such evidence was more prejudicial than probative, this assertion lacks merit. In *Cromwell*, we held that where separate but similar criminal charges are joined in a single trial, evidence material to each crime is admissible independent of K.S.A. 60-455. See 253 Kan. at 509. In the case at hand, the jury was specifically instructed:

'Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it; uninfluenced by your decision as to any other charge. . . .'

"The defendant's contention that the prejudicial value of the evidence of one crime outweighs its probative value begs the question and fails to recognize that evidence of both crimes was admissible independent of K.S.A. 60-455. We conclude that the trial court did not abuse its discretion in joining the two homicide charges." 266 Kan. at 509-10.

In this case, Judge Johnson dissented from the majority opinion in the Court of Appeals' decision on the severance issue. He concluded that denial of severance was an abuse of judicial discretion because: (1) The crimes were not of the same or similar character, (2) trying the three cases together "jumbled" the defense, (3) there was no persuasive argument for consolidation of the charges, and (4) the prosecution delayed filing some of the rape charges and

filed them together to strengthen the weaker cases. A majority of this court finds no merit in these conclusions.

The facts underlying the three rape counts herein are extremely similar—not only as to what occurred, but as to what did not occur.

Count I: A.P. was an acquaintance of the defendant. She went to his residence and fell asleep on his bed. She testified she awoke as he was disrobing her. Also present throughout the incident was a friend of the defendant, who testified he saw and heard only consensual sex acts. The defense was consent.

Count II: At a party, the defendant and E.N., along with two other persons, went to the defendant's car to watch a movie. The other persons left. The defendant and E.N. were in the backseat and started engaging in consensual sexual activity. E.N. testified that after penetration, she said no for the first time. The defense was consent and that consent cannot be withdrawn after penetration.

Count III: The defendant went to see L.B., a former girlfriend. She showed him around the apartment. In the bedroom she backed up, touched the edge of the bed, and fell back on it. The defendant got on top of her. She testified she said no. The defense was consent.

There are also similarities in what did not occur. None of the three complaining witnesses testified that the defendant used a weapon, made threats, tied her up, beat her, acted in anger, or sought to demean or otherwise injure her. Essentially, what each complaining witness described was a wrestling match. This occurred as to E.N. after she withdrew her consent following the initial penetration.

Crimes against persons, particularly including sex crimes and crimes against children, have variances in the facts. No such crime is a clone of another. It is ironic that the major change in the law of joinder and severance sought herein is in a case with the greatest similarity of crimes as compared with prior cases on this issue.

The argument relative to "jumbling defenses" is inscrutable. The defense to each count was consent. The jury acquitted the defendant of two of the three counts. The only conviction came in the

count with the mid-act withdrawal of consent. The majority Court of Appeals opinion stated:

"The jury was instructed that each crime is a separate and distinct offense, and each charge must be decided independent of the others. Bunyard maintains that we cannot assume lack of prejudice by the fact that he was acquitted of two of the charges. However, we find the acquittals to be compelling evidence of the jury's ability to differentiate the applicability of evidence. Bunyard argues that joining the charges led the jury to believe that he had a propensity for acquaintance rape. We believe there is no basis for this statement." *State v. Bunyard*, 31 Kan. App. 2d 853, 864, 75 P.3d 750 (2003).

We find the foregoing reasoning persuasive and agree.

We are also persuaded by the federal courts, which, when faced with a statute similar to ours, in essence hold that joinder of similar crimes is the rule and severance is the exception. As stated in *United States v. Armstrong*, 621 F.2d 951 (9th Cir. 1980):

"We have held that joinder is the rule rather than the exception and that the burden is on the defendant in his appeal following denial of the motion to sever to show that joinder was so manifestly prejudicial that it outweighed the dominant concern with judicial economy and compelled exercise of the court's discretion to sever." 621 F.2d at 954.

Likewise, the United States Supreme Court has held that error due to misjoinder requires reversal only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449, 8 L. Ed. 2d 814, 106 S. Ct. 725 (1986) (adopting a harmless error standard for misjoinder of defendants); see also *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988); *Mitchell v. Nevada*, 105 Nev. 735, 782 P.2d 1340 (1989) (applying the *Lane* standard to misjoinder of claims against one defendant based on *United States v. Gorecki*, 813 F.2d 40, 42 [3d Cir. 1987]). There is no evidence of any such influence or effect on the guilty verdict rendered in the count involving the rape of E.N., especially given that the jury acquitted on the other two rape counts joined therewith. See *State v. Davis*, 277 Kan. 231, 241, 83 P.3d 182 (2004) (the fact that the jury found some defendants not guilty as to all charges demonstrated the jury's ability to compartmentalize the evidence and charges against each defendant); *cf. Mitchell*, 105 Nev. at 738 (finding acquittal of sexual

assault count involving one victim and conviction of sexual assault and murder of a second victim indicated error was harmless).

As we stated in *State v. Howell*, 223 Kan. 282, 284, 573 P.2d 1003 (1977), a defendant's expressed desire to testify as to some but not all of the charges does not mandate a reversal of joinder. To hold otherwise would put the defendant in the driver's seat and cause great strains on our court system. The burden is on the defendant to show special circumstances as to why severance is mandated.

The comments in Judge Johnson's dissent in the Court of Appeals' opinion about the age and relative strength or weakness in the various counts are speculation and are not appropriate considerations when reviewing joinder-severance issues for abuse of judicial discretion. We are unaware of any case law which mandates that only cases of equal strength or weakness may be joined together. Further, the time span between all three incidents occurred within slightly over 1 year and, accordingly, the time span is not significant for severance considerations.

In summary, we find the trial court did not abuse its discretion in denying the motion to sever the three rape counts into three separate jury trials. Granting such a motion in this case is not justified by the joinder statute or our well established case law. The "same or similar character" language of K.S.A. 22-3202(1) does not limit joinder to only those crimes that are clones of each other. Such a narrow interpretation would frustrate the very purpose of the joinder statute. Moreover, the interpretation suggested by the defendant would place the defendant in control of joinder/severance issues. If he or she is charged with 10 residential burglaries, ostensibly, separate jury trials may be had as to each by showing minor differences in the crimes such as entering through a door or window, time of day of the entry, or items taken or not taken. By raising these minor differences, plus arguing the defendant's desire to testify only as to some counts, severance would be required. Severance would become the rule, setting judicial economy on its head.

Joinder is the rule and severance the exception. Our standard of review on this issue is abuse of discretion. As we held in *Barksdale,*

the question is whether the trial court's decision that the crimes were similar and therefore subject to joinder was a decision with which no reasonable person would agree. We answer that question in the negative and find that the defendant failed to demonstrate an abuse of judicial discretion in the trial court's denial of his motion to sever the three rape counts and conduct three separate jury trials.

## Prosecutorial Misconduct

The defendant claims that his conviction should be reversed due to prosecutorial misconduct during closing argument. Generally, the defendant must object to the prosecutor's remarks to preserve the matter for appeal. However, if the remarks implicate the defendant's right to a fair trial or to due process, the issue of prosecutorial misconduct will be addressed without a contemporaneous objection. *State v. Doyle*, 272 Kan. 1157, 1164, 38 P.3d 650 (2002).

"A two-step analysis is applied to allegations of prosecutorial misconduct. First, the court decides whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, the court must decide whether the comments constitute plain error, that is, whether the statements prejudiced the jury against the defendant and denied him or her a fair trial, thereby requiring reversal. The second step is a particularized harmlessness inquiry for prosecutorial misconduct cases." *State v. Tosh*, 278 Kan. 83, Syl. ¶ 1, 91 P.3d 1204 (2004).

A misstatement of the law by the prosecutor denies the defendant a fair trial when the facts are such that the jury could have been confused or misled by the statement. *State v. Henry*, 273 Kan. 608, 619, 44 P.3d 466 (2002).

Under the first prong of the test, the defendant complains that the prosecutor misstated the law when she advised the jury that the force of the penis entering the woman's vagina was sufficient to constitute rape. The defendant in the instant case did not object when the prosecutor stated:

"The law tells you he committed a rape. This is the time when you put the facts to the law, and I'm going to tell you a little bit about what's not in here, what the law does not require the State to prove.

"It shows you exactly what is required to prove, but there are certain things that are not required. A victim is not required to fight back. A victim is not required to become more of a victim, to be beat or have the opportunity to be

hurt any more than the rape, *than the actual force of the penis going inside the vagina. That's enough.*

"A defendant is not required to cause bruises or scratch or restrain or tie up. *The force of his penis in her vagina is enough under the law of the State of Kansas.* Nowhere in here does it say the State has to prove a bruise or a black eye or a scratch or anything like that.

"It has to be proven that the act of sexual intercourse was committed without the consent of the victim, in this case [A.P.], [E.N.], and [L.B.], under circumstances in which she was overcome by force or fear. That's what has to be proven." (Emphasis added.)

Later, the prosecutor stated:

"What you need to do is go back there and ask yourselves, . . . do I believe beyond a reasonable doubt that [E.N.] did not consent to having sexual intercourse, . . . and did that sexual intercourse happen when [she was] overcome by the force of Mr. Bunyard.

*"The force just has to be him on top of her, sticking his penis in her.* That's enough." (Emphasis added.)

The Court of Appeals found that the prosecutor's remark ("The force of his penis in her vagina is enough under the law of the State of Kansas.") was an incorrect statement of the law in Kansas, reasoning: "K.S.A. 2002 Supp. 21-3502(a)(1)(A) clearly contemplates that in addition to sexual intercourse (the penetration portion of the equation), the victim must be overcome by force or fear. It is inaccurate to say that the crime of rape is completed with penetration." 31 Kan. App. 2d at 866.

However, the Court of Appeals went on to apply the following three factors in concluding that the misstatement of law was not prejudicial to the defendant: "(1) the jury instructions, (2) the balance of the prosecutor's remarks during closing argument, and (3) the evidence." 31 Kan. App. 2d at 867. The Court of Appeals found the jury instruction accurately stated the law and pointed to the prosecutor's statements during closing argument, including: "when he had the force of his body and the force of his penis in [E.N. and] he committed a rape," "Do you believe that he forced himself on [her]? That's what you have to decide," and "The only issue is sex without consent with force or fear. Do you believe that happened beyond a reasonable doubt?" 31 Kan. App. 2d at 867. After reviewing the evidence, the Court of Appeals concluded that the

prosecutor's misstatement of the law was harmless error. 31 Kan. App. 2d at 868.

We agree with the panel's conclusion that the prosecutor misstated the law. Relevant to this case, rape is "sexual intercourse with a person who does not consent to the sexual intercourse" "[w]hen the victim is overcome by force or fear." K.S.A. 2004 Supp. 21-3502(a)(1)(A). The prosecutor misstated the law during closing argument by equating the "overcome by force or fear" element of rape with the act of sexual intercourse/penetration. Misstating the law is not within the wide latitude given to prosecutors in closing arguments. We do not agree, however, that this misconduct constituted harmless error under the second prong of the prosecutorial misconduct test.

"In the second step of the two-step analysis for alleged prosecutorial misconduct the appellate court considers three factors to determine if the prosecutorial misconduct so prejudiced the jury against the defendant that a new trial should be granted: (1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), have been met." *State v. Tosh*, 278 Kan. 83, Syl. ¶ 2.

Under the first factor, this court compared the question of whether the misconduct is gross and flagrant "to asking whether 'the objectionable statements [were] likely to affect the jurors to the defendant's prejudice.' " *State v. Villanueva*, 274 Kan. 20, 34, 49 P.3d 481 (2002) (quoting *State v. Lewis*, 238 Kan. 94, 98, 708 P.2d 196 [1985]). Additionally, a prosecutor's misstatement of the law must be considered in the context of the jury instructions given by the court. *Henry*, 273 Kan. at 620.

Under the facts of this case, we conclude that the prosecutor's repeated misstatements that the force of the defendant's penis into the victim's vagina satisfied the force element of the rape charge were likely to affect the jurors to the defendant's prejudice. Although the prosecutor subsequently stated the correct elements of

rape to be proven, as argued by the defendant, the *only* guidance the jury was given as to what constituted the necessary force was the prosecutor's misstatement of the law. The jury instructions, while stating that the victim had to be "overcome by force or fear," did not define the "overcome by force or fear" element of rape. Moreover, as discussed below in this opinion, the jury instructions did not sufficiently instruct the jury concerning the charge of rape in Kansas by stating that post-penetration rape can occur under Kansas law and that the defendant has a "reasonable time" to respond to the withdrawal of consent. Thus, we conclude that the prosecutor's repeated misstatement of the law regarding the force element of rape was gross and flagrant.

Under the second factor, a "prosecutor's indifference to a court's rulings, mocking of a defendant, or repeated acts of misconduct are evidence of ill will and the lack of such conduct shows there was no ill will." *State v. McHenry*, 276 Kan. 513, 525, 78 P.3d 403 (2003). While the prosecutor repeatedly misstated the law concerning the force element, no evidence in the record establishes that the prosecutor purposefully misstated the law. At trial, the court granted the State's request to argue the law set forth in *State v. Borthwick*, 255 Kan. 899, 880 P.2d 1261 (1994), regarding the amount of force required to sustain a rape charge during closing arguments. In *Borthwick*, we held that Kansas law does not require a rape victim to resist to the point of becoming the victim of other crimes such as battery or assault or to be physically overcome by force in the form of a beating or physical restraint in addition to forced intercourse. 255 Kan. 899, Syl. ¶ 7. It appears the prosecutor was attempting to argue the law set forth in *Borthwick* but got woefully off track and repeatedly misstated the law concerning the force element of rape. Thus, no ill will was demonstrated under the second factor of the test.

Under the third factor, we must consider whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of the jurors. This case essentially boiled down to a credibility contest between the defendant and E.N. regarding what happened post-penetration. E.N. testified that she said no and that she

wanted to stop and tried to sit up and turn on her stomach, but the defendant did not stop until 5 to 10 minutes later, when she started to cry. The defendant testified that she got off of him mid-intercourse when he said he was not interested in a relationship. Although some evidence of vaginal abrasions were present, consensual intercourse could not be ruled out. Upon examination of the record, we cannot conclude that the evidence against the defendant regarding whether the victim was "overcome by force" was so direct and overwhelming as to have little weight in the minds of the jurors, particularly in light of the repeated misstatements of the law by the prosecutor concerning the "overcome by force" element of rape and the accompanying jury instruction which did not fully explain the elements of rape in a post-penetration case.

Based on the prosecutor's gross and flagrant misstatement of the force element during closing argument, it is entirely possible under these facts that the jury could have concluded that the defendant's continuation of intercourse after E.N. withdrew her consent was sufficient to establish rape without finding that E.N. was overcome by force or fear. As such, we conclude that this misconduct prejudiced the jury and denied the defendant a fair trial. We, therefore, reverse and remand for a new trial consistent with this opinion.

## Withdrawal of Consent After Consensual Penetration

Because we have remanded this case for a new trial on the reversed rape charge, we think it advisable to assist the trial court upon remand. We therefore address defendant's third issue on the question of withdrawal of consent after consensual penetration. During its deliberations, the jury posed the following question: "If someone allows penetration, but then says no and he does not stop, does that fit the legal definition of rape? Please elaborate on the law. If there is any [to] elaborate." Outside the presence of the jury, the trial court discussed its answer with defense counsel and the State. The State asked the court to answer "yes," and defense counsel stated he would like for the answer to be "no." The court advised defense counsel that responding with a "no" would be absolutely wrong and that if its choice were between "yes"and "no," then "yes" would be the answer.

The trial court, with approval of the defense counsel, responded to the jury's question as follows: "The definition of rape is contained in instructions numbered 6, 7, 8, & 9. I cannot elaborate any further. Please reread the instructions."

The defendant was initially charged with three counts of rape. He was acquitted of two charges and convicted of one charge, which we deal with in this appeal. Thus, Instructions Nos. 6 and 8 were identical to Instruction No. 7, except the victim's initials were different. Instructions Nos. 7 and 9 respectively stated:

"In Count Two (2) the defendant, Josiah R. Bunyard, is charged with the crime of rape. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That the defendant, Josiah R. Bunyard, had sexual intercourse with E.N.;

2. That the act of sexual intercourse was committed without the consent of E.N. under circumstances when she was overcome by force or fear; and

3. That this act occurred on or about August 25, 2000, in Sedgwick County, Kansas."

"As used in these instructions, sexual intercourse means any penetration of the sex organ by the male sex organ. Any penetration, however slight, is sufficient to constitute sexual intercourse."

The defendant argues on appeal that the trial court's failure to give the jury concrete guidance as to (1) whether a rape can occur after consensual penetration, (2) when and under what circumstances the consensual penetration can become rape, rendered the rape statute unconstitutionally vague as applied to the defendant.

The Court of Appeals' decision was split, with the majority affirming the defendant's one count of rape and the dissent voting to reverse the defendant's conviction on the basis that the three charges of rape were erroneously joined for trial over the defendant's objection. The majority and dissent agreed that sexual intercourse performed when one participant is under force or fear is rape; that it does not matter if the force or fear exists at the initiation of the act or it comes after consent is withdrawn; and that a participant in sexual intercourse may withdraw consent after penetration has occurred, with rape occurring if sexual intercourse continues with force or fear after consent has been withdrawn.

The Court of Appeals stated that because the withdrawn consent issue was one of first impression, it did not see "how the trial court

could have crafted an answer that would have satisfied the parties, while at the same time accurately reflect the law." 31 Kan. App. 2d at 862. However, the Court of Appeals further concluded that the trial court answered the jury's question appropriately, and declined to address the defendant's constitutional argument because it was raised for the first time on appeal. 31 Kan. App. 2d at 862. We also do not address the defendant's constitutional argument except to say that the express provisions of the rape statute as interpreted below are not vague.

Under K.S.A. 22-3420(3), a trial court is required to respond to a jury's request for further information as to any part of the law or evidence. The manner and extent of the trial court's response, however, rests in the sound discretion of the trial court. *State v. Cordray*, 277 Kan. 43, 49, 82 P.3d 503 (2004). Under the circumstances of this case, we conclude that the trial court's answer to a question posed by the jury was insufficient to properly instruct the jury how to consider this unique case of first impression. The problem with the trial court's response is that it failed to address the question asked by the jury.

In reaching this conclusion, our analysis begins with the following two related issues raised by the defendant: (1) Was the evidence insufficient as a matter of law to support a conviction of rape, *i.e.*, does the Kansas rape statute cover post penetration conduct, and (2) if rape can occur after consensual penetration, must the defendant have a reasonable time in which to act?

## Consent Withdrawn After Penetration

The defendant argues that the Kansas rape statute does not include circumstances where consent is revoked after intercourse has begun. The defendant interprets the rape statute to apply only to the initial entry into the vagina and argues that if the woman consents to the initial entry, there can be no rape even if consent is withdrawn before the act of coitus is completed. According to the defendant, the sexual battery statutes, K.S.A. 21-3517 for sexual battery or K.S.A. 21-3518 for aggravated sexual battery, or another criminal statute should apply if intercourse is continued after the woman revokes her consent, but the rape statute is not violated.

Analysis of this issue requires the interpretation of a statute, which is a question of law subject to de novo review. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). The fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be determined. An appellate court presumes that the legislature articulated its intent through the language of the statute. If the language is plain and unambiguous, the court must give effect to the language as written without determining what the law should or should not be. *Smith v. Yell Bell Taxi, Inc.*, 276 Kan. 305, 307, 75 P.3d 1222 (2003).

Penal statutes are to be construed strictly in favor of the accused. Ordinary words are given their ordinary meanings. A court should not read a statute to add something that is not found in the language of the statute or to delete something that is clearly found in the language of the statute. *State v. Kitzman*, 240 Kan. 191, 193, 727 P.2d 491 (1986).

K.S.A. 2004 Supp. 21-3502(a)(1)(A) defines rape as "[s]exual intercourse with a person who does not consent to the sexual intercourse . . . [w]hen the victim is overcome by force or fear." " 'Sexual intercourse' means any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1).

The defendant focuses on the phrase "[a]ny penetration, however slight, is sufficient to constitute sexual intercourse," claiming that the statute limits penetration to the initial entry of the penis or other object into the woman's vagina. While we disagree with the defendant's narrow definition of penetration, he finds support in at least two states.

Maryland and North Carolina have concluded that consent may only be withdrawn prior to the initial penetration. If consent is withdrawn after the initial penetration, the defendant cannot be convicted of rape even if the sexual acts are continued against the victim's will by force or fear. *Battle v. State*, 287 Md. 675, 684, 414 A.2d 1266 (1980); *State v. Way*, 297 N.C. 293, 296-97, 254 S.E.2d 760 (1979) (limiting the withdrawal of consent to multiple acts of intercourse). Neither of these courts provide any analysis or cita-

tion to authority to support their conclusions. We decline to follow Maryland and North Carolina.

The defendant's narrow definition of penetration fails to comport with the ordinary meaning and understanding of sexual intercourse, which includes the entire sexual act. Under the defendant's definition of penetration, intercourse begins and ends at the same time. Rather than limiting the definition of intercourse, the phrase "[a]ny penetration, however slight, is sufficient to constitute sexual intercourse" establishes the threshold of evidence necessary to prove that intercourse has occurred. See *State v. Siering*, 35 Conn. App. 173, 182, 644 A.2d 958 (1994) (concluding that the phrase "[p]enetration, however slight, [is sufficient] to complete . . . intercourse" in the statutes did not mean that intercourse was completed upon the initial penetration). When K.S.A. 2004 Supp. 21-3502(a)(1)(A) is construed in accordance with the ordinary meanings of its words, the defendant's argument fails. K.S.A. 2004 Supp. 21-3502(a)(1)(A) proscribes *all* nonconsensual sexual intercourse that is accomplished by force or fear, not just the initial penetration. Thus, a person may be convicted of rape if consent is withdrawn after the initial penetration but intercourse is continued by the use of force or fear.

Our conclusion that rape may occur after the initial penetration is aligned with the majority of states that have addressed the issue of post-penetration rape. See *McGill v. State*, 18 P.3d 77, 82-84 (Alaska App. 2001) (affirming the trial court's instruction that consent could be withdrawn after the initial penetration); *In re John Z.*, 29 Cal. 4th 756, 761-63, 128 Cal. Rptr. 2d 783, 60 P.3d 183 (2003) (overruling prior California appellate court decision of *People v. Vela*, 172 Cal. App. 3d 237, 218 Cal. Rptr. 161 [1985], which held that consent may only be withdrawn before the initial penetration); *Siering*, 35 Conn. App. at 180-83; *State v. Robinson*, 496 A.2d 1067, 1069-71 (Me. 1985) (analyzing a definition for sexual intercourse like K.S.A. 21-3501[1]); *State v. Crims*, 540 N.W.2d 860, 865 (Minn. App. 1995) (concluding that rape does not become a legal impossibility if the victim initially consents to penetration); *State v. Jones*, 521 N.W.2d 662, 672 (S.D. 1994) (declining to adopt the *Vela* analysis); see also Ill. Comp. Stat. ch. 720 5/12-17(c) (2004

Supp.) ("A person who initially consents to sexual penetration or sexual conduct is not deemed to have consented to any sexual penetration or conduct that occurs after he or she withdraws consent during the course of that sexual penetration or sexual conduct.").

## A Reasonable Time to Withdraw

The defendant contends that even if rape can occur after consensual penetration, the State failed to prove that he did not cease sexual intercourse within a reasonable time after E.N. withdrew her consent. Relying upon *In re John Z*, 29 Cal. 4th 756, the Court of Appeals found that "[w]hen consent is withdrawn, continuing sexual intercourse for 5 to 10 minutes is not reasonable and constitutes rape." 31 Kan. App. 2d at 859. The majority opinion and the defendant's argument presume the issue we must decide—whether a defendant is entitled to a reasonable time to act on the victim's withdrawal of consent after consensual penetration.

In *In re John Z,* the victim told the defendant three times that she "needed to go home," but the intercourse continued for an estimated 4 to 5 minutes after the victim first told the defendant she needed to go home. 29 Cal. 4th at 763. The defendant argued that in cases involving an initial consent to intercourse, the male should be permitted a reasonable amount of time in which to withdraw once the female raises an objection to intercourse. The defendant reasoned:

" 'By essence of the act of sexual intercourse, a male's primal urge to reproduce is aroused. It is therefore unreasonable for a female and the law to expect a male to cease having sexual intercourse immediately upon her withdrawal of consent. It is only natural, fair and just that the male be given a reasonable amount of time in which to quell his primal urge . . . .' " 29 Cal. 4th at 762.

In disagreeing with this argument, the California Supreme Court found that apart from the apparent lack of supporting authority for the "primal urge" theory, nothing in the language of its statute suggested that the defendant was entitled to persist in intercourse once his victim withdrew her consent. The court went on to find that even if it was to accept the "reasonable time" argument, the defendant was given ample time to withdraw but refused despite the victim's resistance and objections. The court declined to ex-

plore or recommend instructional language governing the point in time at which a defendant must cease intercourse once consent is withdrawn. 29 Cal. 4th at 763.

The dissenting opinion questioned the majority's reluctance to flesh out what constitutes a reasonable time: "The majority relies heavily on John Z.'s failure to desist immediately. But it does not tell us how soon would have been soon enough. Ten seconds? Thirty? A minute? Is persistence the same thing as force?" 29 Cal. 4th at 767.

The Court of Appeals' decision in this case seems to assume that a defendant should be given a reasonable amount of time to desist but concludes that continuation for an additional 5 to 10 minutes once consent is withdrawn was unreasonable. A recent law review article suggests the California Supreme Court's failure in *In re John Z* to suggest what constitutes a "reasonable time" leads to the disturbing result that men are expected to control their sexual urges eventually, although not immediately, upon withdrawal of consent. Palmer, *Antiquated Notions of Womanhood and the Myth of the Unstoppable Male: Why Post-penetration Rape Should Be a Crime in North Carolina*, 82 N.C. L. Rev. 1258, 1277 (2004).

The majority opinion in this case relied upon *In re John Z* in finding that the defendant did not stop within a reasonable time after the withdrawal of consent, but failed to discuss the California Supreme Court's clear rejection of John Z's argument that he was entitled to a reasonable time in which to act after consent was withdrawn. Although the majority did not explicitly state that a defendant is entitled to a reasonable period to continue intercourse, the idea was implied through its ruling. See Note, *Acquaintance Rape and Degrees of Consent: "No" Means "No," But What Does "Yes" Mean?*, 117 Harv. L. Rev. 2341, 2359 (2004).

In the case of consensual intercourse and withdrawn consent, we agree that the defendant should be entitled to a reasonable time in which to act after consent is withdrawn and communicated to the defendant. However, we conclude that the jury should determine whether the time between withdrawal of consent and the interruption of intercourse was reasonable. This determination must be based upon the particular facts of each case, taking into

account the manner in which consent was withdrawn. We believe this conclusion balances our rejection of the primal urge theory per se with our recognition of the unique facts and circumstances of each individual case.

While the facts of this case may establish that the defendant's continuation of intercourse by placing the victim in fear or by forcing the victim to continue for 5 to 10 minutes was well beyond a reasonable time, we reiterate that this is a jury determination and not for the trial court or the appellate courts to decide. We, thus, conclude that the trial court had a duty to instruct the jury that post-penetration rape can occur under Kansas law and that the defendant has a "reasonable time" to respond to the withdrawal of consent.

Although we have strongly advised trial judges to follow PIK instructions, we have also advised that when faced with a novel question such as the one in this case, a trial court "should not hesitate to make such modification or addition" as is not covered by the PIK instructions. *Hibbert v. Ransdell*, 29 Kan. App. 2d 328, 331-32, 26 P.3d 721, *rev. denied* 272 Kan. 1417 (2001). The trial court in this case was presented with a question of first impression by the appellate courts of this state. Under these circumstances, the trial judge did the best he could by following the PIK instructions. However, the PIK committee had not considered the question raised in this case, and the response by the trial court, therefore, did not directly address the question raised by the jury.

We note that other courts have approved additional instructions such as the following in response to similar juror questions:

"[I]f a couple consensually engages in sexual intercourse and one or the other changes his or her mind, and communicates the revocation or change of mind of the consent, and the other partner continues the sexual intercourse by compulsion of the party who changes his or her mind, then it would be rape. The critical element there is the continuation under compulsion." *Robinson*, 496 A.2d at 1069.

"[I]f there exists consensual sexual intercourse and the alleged victim changes her mind and communicates the revocation or change of mind of consent and the other person continues the sexual intercourse by compelling the victim through the use of force then it would be sexual assault in the first degree.

"This is not just someone withdrawing their consent but it's a withdrawal of consent communicated to the other and then sexual intercourse continues by

compelling the victim through the use of force. So it's not just a withdrawal of consent, it's also a withdrawal of consent communicated to the other person and then a compelling use of force to continue sexual intercourse." *Siering*, 35 Conn. App. at 179 n.4.

The answer given by the trial court in this case was partially correct by referring to the elements of rape. However, the complete answer in addition to setting forth the elements of rape should have indicated to the jury that rape may occur even though consent was given to the initial penetration, but only if the consent is withdrawn and communicated to the defendant, the defendant does not respond within a reasonable time, and the sexual intercourse continues where the victim is overcome by force or fear. A reasonable time depends upon the circumstances of each case and is judged by an objective reasonable person standard to be applied by the trier of fact on a case-by-case basis.

Judgment of the Court of Appeals affirming the district court is reversed. The district court is reversed, and the case is remanded for a new trial.

BEIER and GERNON, JJ., not participating

BRAZIL, S.J., assigned.

MCFARLAND, C.J., dissenting in part and concurring in part: I dissent from the portion of the majority which holds that the prosecutor's misstatement of the law prejudiced the jury and denied the defendant a fair trial and thereby requires that his conviction be reversed and remanded for a new trial.

On the prosecutorial misconduct issue, which serves as the sole basis for the majority's reversal of the convictions, I agree with the majority's reliance on *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004), as the correct analytical framework for reviewing such claims. I believe however, that the majority has misapplied the *Tosh* framework to the facts in this case.

The *Tosh* framework has two steps. In the first step, a reviewing court decides whether the prosecutor's comments are outside the wide latitude allowed in discussing the evidence. The majority concluded that the prosecutor misstated the law and that "[m]isstating the law is not within the wide latitude given to prosecutors in closing arguments." I agree completely with the majority's decision on this point.

In the second step of the analysis, a reviewing court decides whether the statements prejudiced the jury against the defendant and denied him or her a fair trial. Three factors, none of which are controlling, bear on this inquiry: (1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. 278 Kan. 83, Syl. ¶ 2.

As to the first factor, the majority seeks to define gross and flagrant misconduct by equating it to language found in *State v. Villanueva*, 274 Kan. 20, 34, 49 P.3d 481 (2002), and *State v. Lewis*, 238 Kan. 94, 98, 708 P.2d 196 (1985), where the court parenthetically said that in deciding whether misconduct is gross and flagrant, the question is whether " 'the objectionable statements [were] likely to affect the jurors to the defendant's prejudice.' " While determining whether misconduct was likely to affect the jury is the cornerstone of the second prong of the *Tosh* test, we must also decide whether the misconduct was gross and flagrant, as those terms are commonly understood.

In my view, we can simply look to the ordinary meaning of the terms "gross" and "flagrant" to guide us. "Gross" describes something that is " 'glaringly noticeable usually because of inexcusable badness or objectionableness,' " " '[o]ut of all measure; beyond allowance; flagrant; shameful; as a gross dereliction of duty, a gross injustice, gross carelessness or negligence. . . . Such conduct as is not to be excused.' " *Jones v. Kansas State University*, 279 Kan. 128, 150, 106 P.3d 10 (2005) (quoting Webster's New Collegiate Dictionary 507 [1973] and Black's Law Dictionary 702 [6th ed. 1990] in context of "gross misconduct" as used in employment

security law statutes). "Gross" is a modifying term that "empha-size[s] extremity or intensity. . . [and] suggests a magnitude of offense or failing that cannot be overlooked or condoned." The American Heritage Dictionary of the English Language 498 (1971) (discussing "gross" as a synonym for "flagrant").

The term "flagrant," a listed synonym for "gross," describes something that is "conspicuously bad or objectionable;" and "so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality." Webster's Ninth New Collegiate Dictionary 468 (1991). Like its synonym "glaring," "flagrant" "stress[es] the conspicuousness of what gives cause for concern or offense. . . . but *flagrant* often makes the stronger implication of wrongdoing as a moral offense rather than an act of miscalculation or ineptitude." The American Heritage Dictionary of the English Language 498 (1971) (discussing "glaring" as a synonym for "flagrant").

The term "gross," therefore, denotes a higher degree of impropriety than ordinary misconduct, while "flagrant" concerns misconduct that is not the result of mistake or ineptitude, but instead is so blatantly inconsistent with well-settled law that it evidences a purposeful effort to ignore the law.

Reviewing the record with these concepts in mind, I do not find the prosecutor's misstatements of the law to be "gross and flagrant" misconduct. At the time the misstatements were made, no case law existed for the rule that the mere force of the penis into the vagina cannot constitute the element of force under the crime of rape. Thus, the statement was not so conspicuously contrary to a well-settled point of law that it could be said the prosecutor was "flouting" the law in making the misstatement. See *State v. Morton*, 277 Kan. 575, 585, 86 P.3d 535 (2004) (noting that an experienced prosecutor should have been and was apparently aware of numerous cases finding error in conveying that premeditation can occur in an instant).

Similarly, there is no evidence these remarks were a purposeful misstatement of the law—a point the majority implicitly recognizes by finding a lack of ill will. Intent, or lack thereof, is a relevant consideration in deciding whether conduct is gross and flagrant.

See, *e.g.*, *State v. Dixon*, 279 Kan. 563, 592, 112 P.3d 883 (2005) ("flagrant" violation of defendant's right to fair trial where prosecutor intended to imply that only guilty people contact attorneys, and intended to cause jury to infer guilt on that basis); *State v. Broyles*, 272 Kan. 823, 833, 36 P.3d 259 (2001) (in evaluating whether conduct was gross and flagrant, court considered that comment appeared to be merely a misguided attempt to counter a defense argument); *State v. Graham*, 247 Kan. 388, 397, 799 P.2d 1003 (1990) (gross misconduct to assert a fact as true which prosecutor knows to be false); *State v. Murrell*, 215 Kan. 10, 523 P.2d 348 (1974) ("gross and fraught with . . . prejudice" especially applies where the prosecutor has persisted in making comments calculated to inflame the passions and prejudices of the jury); *State v. Dill*, 3 Kan. App. 2d 67, 76, 589 P.2d 634 (1979) (conduct is gross and flagrant where "[e]ven an experienced prosecutor knows" that insinuating addiction to narcotics is improper).

The remarks in this case were not intentional misstatements of the law, but rather, appear to be the result of an inept mistake that arose out of the effort to make the legitimate point that force does not require the infliction of violence.

The fact that the prosecutor's statements prompted neither an objection by counsel nor interruption by the judge also indicates that they were not glaring misstatements or conspicuously offensive (though I recognize that the lack of either does not remove the misconduct from our review). See *People v. Rodriguez*, 794 P.2d 965, 972 (Colo. 1990) (recognizing lack of objection is factor to consider in examining prosecutorial misconduct, as lack of objection may demonstrate defense counsel's belief that argument was not overly damaging).

Taking the gross and flagrant analysis to the next step, I disagree that the misstatements were likely to affect the jurors to the defendant's prejudice. The majority reasons, in part, that the misconduct by the prosecutor was gross and flagrant because of two problems with the jury instructions: (1) the jury instructions did not define the "overcome by force or fear" element of rape; thus, the only guidance the jury had as to what constituted force was the

misstatement of law; and (2) the jury instructions were insufficient on the post-penetration rape issue.

With respect to the fact the jury instructions did not define the element of "overcome by force," it must be noted that all of the instructions given by the trial court concerning the elements of rape were straight from PIK Crim. 3d 57.01, requested by defense counsel, and never objected to. There is no claim on appeal by the defendant that the jury received incorrect oral or written jury instructions from the court. Moreover, although the majority sees significance in the fact the instructions did not provide a definition of the "overcome by force" element, force is a widely used and readily comprehensible term that does not require a definition. See *State v. Norris*, 226 Kan. 90, 95, 595 P.2d 1110 (1979) (term which is widely used and which is readily comprehensible need not have a defining instruction).

Additionally, the idea that the jury was prejudiced by the misstatement is contradicted by the acquittals on the other two charges. The facts underlying the three rape counts are extremely similar both as to what occurred, as well as to what did not occur, especially with respect to the element of force. As the majority opinion notes, each of the victims described her resistance to Bunyard's conduct as essentially a wrestling match. None of the victims testified that he used a weapon, made threats, tied her up, beat her, acted in anger, or sought to demean or otherwise injure her. Because the facts were so similar, and the misstatements at issue concerned the element of force with respect to all three victims, the acquittals in the two other cases provide a clear indication the misstatements did not prejudice the jury against the defendant.

Furthermore, the misstatements were not significant under the facts of E.N.'s case. Under both versions of the event, consent was withdrawn during the intercourse. The point of contention centered on whether there was forcible continuation of the intercourse after consent was withdrawn. In E.N.'s version of the facts, her struggles against Bunyard as she was pinned under him in the tight confines of the backseat of his two-door Chrysler Sebring convertible provided sufficient evidence of forcible continuation of the intercourse above and beyond mere penetration. In contrast, Bun-

yard's version had no forcible continuation at all. Under his version, E.N. was on top of him during the encounter, was in control of whether and when the intercourse ended, and she did, in fact, end the intercourse when she no longer desired that it continue. Thus, whether or not the force of his penis in her vagina, standing alone, was sufficient to constitute the force element was simply not a significant issue.

I also take issue with the majority's conclusion that the failure to provide the jury with additional instruction that post-penetration rape can occur when consent is withdrawn is significant in determining whether the misstatements about force prejudiced the jury. Although the jurors had a question about whether consent can be withdrawn after penetration, their request asked the court to "[p]lease elaborate on the law, if there is any [to] elaborate." This shows the jury anticipated the possibility there was no law on the issue and, therefore, the jurors anticipated they might have to resolve the issue themselves. Moreover, their guilty verdict demonstrates that even in the absence of additional instruction the jurors were able to, and did, resolve the issue consistent with the rule announced by the majority, for had they concluded that consent cannot be withdrawn after penetration, they necessarily would have acquitted Bunyard. Therefore, had the jury been instructed that consent can be withdrawn after penetration, the outcome would not have been any different and, thus, no prejudice is shown.

I also disagree that Bunyard was prejudiced by the combination of the failure to instruct the jury that he had a reasonable time to respond to the withdrawal of consent, and the misstatements concerning force. Under Bunyard's defense he did not respond to the withdrawal of consent—he contended it was E.N. who ended the intercourse. Thus, whether or not he continued the intercourse for an unreasonable time after E.N. withdrew consent was not an issue relevant to the defense theory.

As we said in *Tosh*, it is the function of the appellate courts to consider the degree of seriousness involved and the likely effect of prosecutorial misconduct when deciding whether a particular case merits reversal. *Tosh*, 278 Kan. at 93-94. In this case, the misstatements did not involve a degree of impropriety beyond ordinary

misconduct, were not so obviously inconsistent with well-settled law that it can be said the prosecutor was flouting the law, and under the unique facts of this case, were not likely to have any prejudicial effect on the jury. For these reasons, I would hold that the prosecutor's misstatements of the law during closing argument did not amount to gross and flagrant misconduct.

The second factor in the second step of the *Tosh* analysis poses the question of whether the misconduct shows ill will on the prosecutor's part. The majority answered this question in the negative, and I would agree that the record is absent any indication of ill will.

The third factor in determining if the prosecutorial misconduct so prejudiced the jury against the defendant requiring a new trial poses the question of "whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would have little weight in the minds of the jurors." *Tosh*, 278 Kan. 83, Syl. ¶ 2. As stated in *Tosh*, before this factor can "ever" override the other two factors (gross and flagrant and ill will) the reviewing court must be able to say that the harmlessness tests of both K.S.A. 60-261 (inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (error harmless beyond a reasonable doubt in that it had little, if any, likelihood of having changed the result at trial), have been met. 278 Kan. at 97.

The majority concludes that the evidence regarding whether E.N. was "overcome by force" was not so direct and overwhelming that the misstatements would have had little weight in the minds of the jurors. Of course, this is often the case in rape cases, and particularly date rape or acquaintance rape type cases; the evidence boils down to a credibility contest between the victim and the defendant. However, in order for a misstatement of the law by the prosecutor to be reversible error, it is not enough to simply say the evidence was conflicting. For a misstatement of the law to constitute reversible error, the facts must be such that the jury could have been confused or misled by the misstatement. *State v. Henry*, 273 Kan. 608, 619, 44 P.3d 466 (2002) (a misstatement of the law by the prosecutor denies the defendant his or her right to a fair

trial when the facts are such that the jury could have been confused or misled by the statement).

In my opinion, under the facts of this case, the jury was not misled or confused by the prosecutor's misstatement. The question of whether the mere force of his penis in the victim's vagina was sufficient to constitute force was not critical to Bunyard's defense, nor was it a significant issue in the case. The victim's version of events was sufficient to establish that intercourse was continued by force *other than* mere penetration, while Bunyard's defense was a completely different version of events in which there was no continuation of the intercourse after consent was withdrawn—by force or otherwise. The misstatement could not have misled the jury in this case, and the verdict would have been the same had the misstatement not been made. *Cf. State v. Redford,* 242 Kan. 658, 671-72, 750 P.2d 1013 (1988) (where defense to rape by force or fear was a completely different version of events than that given by the victim, and was based on consent, omission of the force or fear element from the jury instructions was harmless error).

Lastly, I disagree with the majority's reliance on the fact that the jury instructions did not fully explain the elements of rape in a post-penetration withdrawal of consent situation, to conclude that the misstatements constitute reversible error under the third factor. As the majority acknowledges, given this was a novel issue of first impression, the trial judge did the best he could in responding to the jury's question.

It can also be said with certainty that the jury resolved the withdrawal of consent issue correctly and, therefore, the outcome would not have been different even had the jury been provided additional instruction. If the failure to provide this jury additional instruction could have had no effect on the outcome of this case, that failure certainly cannot serve to tilt the scales toward reversal.

For all the foregoing reasons, and given the entire record of the case, I would hold that the misstatements of the law made by the prosecutor in this case do not satisfy the second step of the *Tosh* analysis. The misconduct was not gross and flagrant, was not a product of ill will, and would have had little weight in the jurors' minds. The misstatements did not prejudice the defendant and

were harmless beyond a reasonable doubt because they had little, if any, likelihood of changing the result. I would, therefore, affirm the conviction.

Having reviewed all the arguments posed by the defendant and the entire record on appeal, I would affirm the defendant's conviction.

LUCKERT, J., dissenting in part and concurring in part: I join Chief Justice McFarland's dissent. Additionally, although I concur in the majority's holding that rape can occur post-penetration, I dissent from the majority's conclusion that a defendant who is charged with rape under K.S.A. 2004 Supp. 21-3502(a)(1)(A) "is entitled to a reasonable time in which to act after consent is withdrawn."

The majority does not explain how a jury should interpret "reasonable time" when a defendant is charged with rape under K.S.A. 2004 Supp. 21-3502(a)(1)(A), which requires the State to prove the victim was overcome by force or fear. There are two possible readings of the majority holding. The presence of an ambiguity is, in itself, troubling. Additionally, both of the potential interpretations are problematic.

Under one interpretation, the majority, by allowing a reasonable time to act, may be implicitly recognizing that persistence is sufficient to satisfy the requirement of force after penetration has occurred. Yet, the majority would reverse the conviction in this case because the prosecutor stated, "The force of his penis in her vagina is enough under the law of the State of Kansas." Does this mean that the physical contact inherent in intercourse cannot satisfy the element of force when there is no consent before penetration but may be sufficient force to constitute rape when the consent is withdrawn post-penetration? The potential dichotomy is troubling.

The alternative reading is even more troubling. If the majority opinion is read to require more force than mere persistence, the effect of the ruling is to grant a defendant a safe harbor of "reasonable time" during which the defendant may exert this higher degree of force or strike fear in the victim.

I would hold that a defendant has committed rape if, after consent is withdrawn, the act of intercourse continues as the result of force or fear. This holding is consistent with the elements defined by K.S.A. 2004 Supp. 21-3502(a)(1)(A). The court should not judicially add a defense allowing a reasonable time in which to commit rape.