No. 46,017

STATE OF KANSAS, *Appellee*, v. B. G. DECKER, *Appellant.*

(485 P. 2d 171)

Opinion filed May 15, 1971.

*David G. Arst,* of Wichita, argued the cause and was on the brief for the appellant.

*Keith Sanborn,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *R. K. Hollingsworth,* Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action wherein the defendant was convicted of forgery under K. S. A. 21-608, and uttering under K. S. A. 21-609.

The defendant (appellant) assigns two specifications of error: (1) That the trial court erred in overruling his motion to discharge because the state failed to make out a *prima facie* case; and (2) the trial court erred in permitting the case to be submitted to the

jury when the state failed to file an information charging the defendant.

The second specification may be summarily answered by stating that the record discloses an information was filed with the clerk of the district court of Sedgwick County on May 1, 1969, at 4:44 p. m. The information as filed is set forth in full in the counter abstract and discloses the appellant's second specification of error to be wholly without merit.

The first specification relates to the sufficiency of the state's evidence to sustain a conviction on the two charges.

The instrument involved was a check in the amount of $10 drawn on the personal checking account of the defendant's brother, Bill D. Decker, carried at the Seneca National Bank of Wichita, Kansas. It was cashed at the Seneca Bowling Lanes in Wichita, Kansas, on March 24, 1969.

In March, 1969, Bill discovered several of his blank personal check forms were missing from his checkbook. The blank checks were not taken from the top of the pad, but were removed somewhere beneath the top blanks. When Bill discovered the missing check blanks he notified the bank.

On the 24th day of March, 1969, Bill took his brother, B. G. Decker (defendant-appellant) to the Seneca Bowling Lanes and let him out. They had no conversation about the defendant cashing a check. The defendant approached the cashier at the bowling alley and asked if he could cash a check for $10. The defendant had no identification but informed the cashier, Helen Corbin, that he knew Loretta Decker, a bowler, whom he identified as his sister-in-law.

When the defendant was advised he could cash a check, he wrote it on one of Bill's missing blank checks, signing it "Bill D. Decker." He was given $10 in cash from the cash register. The cashier stamped in the payee's name, Seneca Bowling Lanes, Inc.

The bank refused to honor the check because the signature did not correspond with the signature card, plus the fact that the bank had previously been notified some of Bill's blank checks were missing.

At the trial Bill testified he did not authorize anyone to sign any checks in his name.

The defendant's testimony was to the effect that Bill had told him, when he (the defendant) asked about signing his (Bill's) name to

checks, "Go ahead, I don't care." The defendant, however, admitted taking blank checks out of Bill's checkbook, and that he did not tell Bill about it.

At the time of the foregoing conversation a third party by the name of Dalton Harp was present. He testified he heard Bill say "Go ahead and write one," but it was more or less a joke (the defendant having previously been convicted of forgery) in connection with conversation to the effect that the defendant could not forge his (Bill's) name and get away with it.

On rebuttal Bill said he recalled the incident and testified the defendant said—in response to Bill's statement, "I don't believe anybody can sign my name"—that "he could or bet he could," which made Bill a little angry. At the time of the conversation Bill informed the defendant he did not have any money in the bank anyway. On cross-examination Bill testified he did not think the defendant got the impression from the conversation that it would be all right if the defendant wrote a check on his (Bill's) account. Bill said he might have assumed he had authority, "but I didn't intend it."

On rebuttal Helen Corbin testified when the check in question had been returned to the bowling alley by the bank, she received a phone call at a time when Bill Decker was present at the bowling alley standing near the cafeteria at the back of the bowlers' section. The person calling on the phone said he was Bill Decker and would be in to pick up the check here in question.

Three previous criminal cases showing conviction of the defendant for the offenses of forgery and uttering of a bank check were introduced in evidence. One conviction was on March 5, 1965, and the other two cases, consolidated for trial, disclose convictions on the 24th day of July, 1968, for five counts of forgery and five counts of uttering a bank check.

The defendant was on parole at the time the offense charged in this case was committed.

The appellant contends one of the critical elements to prove forgery under 21-608, *supra,* is that the proposed forged document be written with intent to defraud. The appellant argues the state has not attempted to show that the appellant intended or even knew that the victim was defrauded. On this point the appellant argues:

"The testimony, however, showed that the defendant merely handed State's Exhibit No. '1' [the check] to Helen Corbin, an employee of Seneca Bowling Lanes, Inc., stating that he would like to get a check cashed and that he had no identification. Mrs. Corbin, after being satisfied that the

defendant's sister-in-law, a person known to her, was bowling on the premises, took it upon herself to stamp in the name of the payee and give the defendant $10.00."

It is axiomatic that a person is presumed to intend the natural and probable consequences of his voluntary and deliberate act, and if the commission of an unlawful act is proved, it will be presumed that such act was done with criminal intent. (*State v. Eye,* 161 Kan. 69, 71, 166 P. 2d 572; and *State v. Donahue,* 197 Kan. 317, 318, 416 P. 2d 287.)

In a forgery prosecution where the charge includes the false making and forging of a signature of another person to a written instrument, proof that such signature is not in the handwriting of the person whose signature it purports to be is *prima facie* evidence that the signing of such name was unauthorized and is a forgery. (*State v. Young,* 203 Kan. 296, 454 P. 2d 724, Syl. ¶ 2; and K. S. A. 62-1418.)

One of the essential elements for conviction under K. S. A. 21-609 is that the accused knew the instrument was a forgery at the time he uttered or passed it, and such knowledge may be proved by circumstantial evidence. (*State v. Satterfield,* 202 Kan. 395, 449 P. 2d 566, Syl. ¶ 1.)

Here the evidence showed the appellant went to the cashier of Seneca Bowling Lanes, Inc. and upon being told that he could cash a check, *he wrote a check on the Seneca National Bank signing another's name* in the presence of the cashier. He was thereupon given $10 from the cash register. The mere fact that the cashier stamped in the name of the payee had no bearing upon the defendant's intent to defraud.

The evidence in the record is conflicting as to whether the appellant was authorized to sign the check in question, but the state's evidence was quite sufficient to show that Bill's name had been written on the check without his authority, and the jury saw fit to give it credence. (*State v. Lovell,* 132 Kan. 759, 297 Pac. 685.)

Bill testified he had not given anyone authority to sign his name on the check in question. On recross-examination his last statement in answer to the question, "But you might have done it; is that correct?" was "As far as I know, I didn't authorize anybody."

On the record presented there was substantial competent evidence to uphold the jury's findings that the appellant was not authorized to sign the check in question, and that the appellant intended to defraud.

The judgment of the lower court is affirmed.