No. 50,203

STATE OF KANSAS, *Appellee,* v. ROBERT L. NORRIS, *Appellant.*

(595 P.2d 1110)

 Opinion filed June 9, 1979.

*Gary M. Austerman,* of Jochems, Sargent & Blaes, of Wichita, argued the cause and was on the brief for the appellant.

*Gregory L. Waller,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Robert L. Norris was convicted by a jury of making and endorsing (K.S.A. 21-3710[1][a]) and of issuing a forged check (K.S.A. 21-3710[1][b]). He attacks the constitutionality of this statute and alleges several trial errors.

Four blank check forms were stolen from a business owned and operated by Mrs. Haggard, and on December 2, 1978, a check purporting to be drawn by Mrs. Haggard in the amount of $203.47 was presented by the appellant to a clerk in a Wichita grocery store. The check was payable to a Dan Norris. Appellant presented an identification card in the name of Dan Norris. A regiscope picture was taken of the appellant cashing the check. The check was returned with the notation "Reported stolen."

Appellant in his trial testimony explained his actions. He said he was staying at a halfway house where persons recently released from prison are cared for. Patrick Mullin, a friend he had known in prison, enlisted his help in cashing a check. Mullin informed him he was working for Haggard and had gotten the job by using the name of appellant's brother, Dan Norris. Appellant agreed to assist Mullin, and obtained an identification card from the brother. The identification card was obtained on the pretext it was needed to get someone into a club. Appellant, rather than Mullin, cashed the check because the identification did not fit Mullin. The money received was all turned over to Mullin.

The above trial testimony varied in one important detail from an oral statement appellant gave the police after his arrest. Detective Phipps testified as to his conversation with appellant. Phipps had been advised by appellant that two attempts were made before the check was cashed. Appellant told the officer that when the check was first presented they refused to cash it, so he "filled out another check" and passed it. This statement was the primary basis for the "making and endorsing" count. Appellant denied having made this statement to the officer when questioned during the trial but it is not our function to decide the credibility to be assigned to testimony of witnesses.

The first point concerns the alleged unconstitutionality of the forgery statute under which appellant was charged. It is alleged the provisions of the statute are too vague and indefinite to withstand constitutional challenge under Section 10 of the Kansas Bill of Rights and the Fourteenth Amendment of the United States Constitution (due process clauses). The test of whether a statute is so vague and indefinite that it fails to inform an accused of the nature and basis for the charges against him or her is the same under Section 10 of the Kansas Bill of Rights as it is under the due process clause of the Fourteenth Amendment of the United States Constitution. See *State v. Stauffer Communications, Inc.,* 225 Kan. 540, 545, 592 P.2d 891 (1979); *State v. Kirby,* 222 Kan. 1, 3-4, 563 P.2d 408 (1977); *State v. Conley,* 216 Kan. 66, Syl. ¶ 1, 531 P.2d 36 (1975).

The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the

conduct proscribed when measured by common understanding and practice. If a statute conveys such warnings it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. The underlying principle supporting this test is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be prohibited. *State v. Stauffer Communications, Inc.,* 225 Kan. at 546; *State v. Gunzelman,* 210 Kan. 481, Syl. ¶ 2, 502 P.2d 705, 58 A.L.R.3d 522 (1972). This test is consistent with that recognized by the United States Supreme Court. See *United States v. Harriss,* 347 U.S. 612, 617, 98 L.Ed. 989, 74 S.Ct. 808 (1954).

When considering the validity of a statute the court starts with a presumption of constitutionality; all doubts must be resolved in favor of validity of the statute, and before it can be stricken a clear showing must be made that the statute violates the constitution. *State v. Kirby,* 222 Kan. at 3-4.

The forgery statute, K.S.A. 21-3710, prohibits three different types of conduct connected with forged instruments when such conduct is purposeful and with intent to defraud. The first type of conduct is listed under (*a*) and reads:

"Making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed by another person, either real or fictitious, and if a real person without the authority of such real person; or altering any written instrument in such manner that it purports to have been made at another time or with different provisions without the authority of the maker thereof; or making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed with the authority of one who did not give such authority; or"

The second is listed under (*b*) and reads:

"Issuing or delivering such written instrument knowing it to have been thus made, altered or endorsed; or"

The third is listed under (*c*) and reads:

"Possessing, with intent to issue or deliver, any such written instrument knowing it to have been thus made, altered or endorsed."

Subsection (*c*) proscribing possession of forged instruments was not charged in the present case and we are not here concerned with that subsection.

Turning first to subsection (*a*) of this statute, it proscribes and prohibits the making, the altering or the endorsing of any written instrument knowingly and with intent to defraud. A further explanation is added. The making, altering or endorsing of the instrument, to constitute the crime, may have been done in such a manner that (1) it purports to have been made, altered or endorsed by another person, real or fictitious, and if a real person then such conduct must be without authority of such real person, or (2) if a written instrument is altered it may purport to have been made at another time or with different provisions and without authority of the real maker, or (3) the written instrument may have been made, altered or endorsed in such manner it purports to have been made, altered or endorsed with the authority of one who did not give such authority.

This conduct prohibited by the statute is not vague or indefinite. The appellant should have had no trouble in understanding what conduct on his part was prohibited. Accepting the testimony of Detective Phipps as true the appellant admitted "filling out another check." The check purported to have been made by Mrs. Haggard was without her knowledge or authority. The blank checks had been stolen. The check was made payable to Dan Norris without his knowledge and endorsed in his name without his authority. Under the evidence it appears clear that appellant should have reasonably understood such actions on his part were prohibited under this statute.

Now turning to subsection (*b*) of the statute, which proscribes the issuance or the delivery of a forged instrument knowing it to have been thus made, altered or endorsed, the prohibition contained in such paragraph of the statute could hardly be stated more clearly. Its message was and is—don't issue or deliver an instrument when you know it has been forged or altered in some particular.

The provisions of K.S.A. 21-3710(1)(*a*) and (*b*), which prohibit certain acts of forgery, convey sufficiently definite and certain warnings as to the conduct proscribed when measured by common understanding and practice. These provisions of the criminal statutes are not unconstitutional as being in violation of Section 10 of the Kansas Bill of Rights and the Fourteenth Amendment of the United States Constitution (due process clauses).

Appellant's second point is that the State failed to establish a prima facie case of forgery in that proof of an intent to defraud was lacking.

Normally intent is not susceptible of direct or concrete proof. Intent depends upon a state of mind of the individual which, unless expressed, can only be inferred from the actions of the individual. Therefore, intent to defraud should be left for the jury to decide if there are facts and circumstances which would support an inference of an intent to defraud. *State v. Giddings,* 216 Kan. 14, 18-19, 531 P.2d 445 (1975), modified on another point in *Wilbanks v. State,* 224 Kan. 66, 74-75, 579 P.2d 132 (1978).

In a prosecution for forgery where the charge includes the making and forging of the false signature of another to a bank check, proof that such signature is not in the handwriting of the person whose signature it purports to be is prima facie evidence that the signing of such name was unauthorized and is a forgery. *State v. Decker,* 207 Kan. 374, Syl. ¶ 2, 485 P.2d 171 (1971). In determining whether the trial court should have entered a verdict of acquittal the appellate court is limited to ascertaining whether there was a basis for a reasonable inference of guilt, which in this case would include a reasonable inference of an intent to defraud. See *State v. Duncan,* 221 Kan. 714, 719, 562 P.2d 84 (1977). We need not review the evidence or discuss the inferences arising therefrom. The evidence supported a reasonable inference that appellant participated in these crimes knowingly and with an intent to defraud either Mrs. Haggard or the grocery store where the check was issued and the money was received.

As his third point appellant contends he was denied a fair trial because of jury misconduct. On a motion for new trial appellant offered the testimony of two jurors concerning certain statements made by a third juror. The testimony offered was to the effect the third juror stated, "[Y]ou can't believe anything they say, because they're ex-cons," and "If he did it once, he'll do it again." Appellant argues that these statements were improper in that each juror had made a commitment on voir dire not to allow a witness' criminal record to prejudice his or her decision.

K.S.A. 60-441 provides that upon inquiry as to the validity of a verdict no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as

influencing him to assent to the verdict or concerning the mental processes by which it was determined. In this case the evidence was offered for the purpose of examining the mental process by which the juror reached his verdict. The evidence did not relate to extraneous misconduct by the juror; therefore, the evidence may not be introduced or considered by the courts. See *Crowley v. Ottken,* 224 Kan. 27, 30-31, 578 P.2d 689 (1978); *State v. McDonald,* 222 Kan. 494, 496, 565 P.2d 267 (1977); *State v. Morgan,* 207 Kan. 581, 582-583, 485 P.2d 1371 (1971); *Brown v. Hardin,* 197 Kan. 517, 523, 419 P.2d 912 (1966).

Appellant's final point of error concerns the instructions. K.S.A. 21-3710 requires a specific intent to defraud. In the instructions "intent to defraud" was set forth as an element or issue to be proven by the State. However, no further definition was given as to the meaning of "intent to defraud." Under the general definitions set forth in the Kansas Criminal Code, K.S.A. 1978 Supp. 21-3110(9), "intent to defraud" means an intention to deceive another person, and to induce such other person, in reliance upon such deception to assume, create, transfer, alter or terminate a right, obligation or power with reference to property.

The appellant at trial advised the court through his counsel that he had examined the instructions and had no objections. Appellant now contends that these same instructions were clearly erroneous because of the lack of a definition of intent to defraud, and that under K.S.A. 22-3414(3) this error may be raised for the first time on appeal since he claims the instructions were clearly erroneous. We do not agree.

The trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury, or cause them to speculate, that additional terms should be defined. *State v. Griffin,* 221 Kan. 83, 558 P.2d 90 (1976). A term which is widely used and which is readily comprehensible need not have a defining instruction. *State v. Schoenberger,* 216 Kan. 464, 532 P.2d 1085 (1975). In the present day when both state and federal governments have stressed consumer protection against fraud in sales and services of consumer goods purchased by the general public, the term "intent to defraud" is generally understood. The phrase is one which men of common intelligence and understanding can comprehend and is not a term that requires definition.

Since the term is defined in the Kansas Criminal Code (K.S.A. 1978 Supp. 21-3110[9]), it would have been proper on the request of either the defendant or the State to have given the statutory definition. However, in the absence of a request failure to define the term does not constitute error.

Judgment affirmed.