IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 126,626

STATE OF KANSAS,
*Appellee*,

v.

DARREN MATTHEW JOHNSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

The cessation of lights and sirens does not end a pursuit as a matter of law for purposes of K.S.A. 2019 Supp. 8-1568.

2.

"Reckless driving," which has a legally codified definition, does not have so common a meaning that it need not be defined for the jury.

3.

Reckless second-degree murder is not a more specific offense than felony murder.

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Oral argument held September 8, 2025. Opinion filed November 26, 2025. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi Litfin*, deputy district attorney, argued the cause, and *Michael F. Kagay*, district attorney, and *Kris W. Kobach,* attorney general, were with her on the brief for appellee.

1

The opinion of the court was delivered by

ROSEN, J.: After Darren Johnson participated in a robbery in Topeka and fled the scene by car, an officer located and pursued him. Johnson did not stop his vehicle in response to the officer's lights and sirens and eventually struck another driver, resulting in the death of a passenger in Johnson's car. A jury convicted Johnson of felony murder, reckless second-degree murder, felony fleeing or attempting to elude a police officer, and aggravated robbery. Johnson appeals his convictions for felony murder and felony fleeing or attempting to elude a police officer and an order for $100 in attorney fees. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Around 2:30 A.M. on June 22, 2020, Darren Johnson called his friend Kyle Sutton and asked him for a ride. Sutton agreed and drove his black Kia Soul to pick up Johnson. When Sutton arrived, Johnson was waiting with his friend Jayden Root who also needed a ride. The three traveled to a gas station and then to Root's home. As the three men walked from the parked vehicle toward Root's home, Root and Johnson came up behind Sutton, took him to the ground, and robbed him at gunpoint. Johnson and Root then drove away in Sutton's car. Johnson was driving the vehicle.

Sutton ran to a nearby house fire where law enforcement officers were present. Sutton told an officer he had just been robbed by two men who had driven off in his car. The officer radioed a description of the car to officers in the area. Officer David Scott began searching for the car and the suspects.

Officer Scott was driving south on Indiana Street in Topeka when he saw Sutton's black Kia Soul traveling west on Sage toward Indiana Street. The Kia turned onto Indiana Street and began traveling north. Officer Scott turned his car around, activated his lights

and sirens, and began following the Kia to initiate a stop. The Kia accelerated and eventually turned left onto 21st Street, running a red light at the turn. Officer Scott lost sight of the vehicle, so he turned off his lights and sirens. Officer Scott would testify that he continued driving in the direction the Kia had gone, but that he was no longer chasing or pursuing the Kia per department policy because he could not see it.

During this time, Officer Justin Good was parked at a dollar store at 21st and Adams Street. Seconds after Officer Scott lost sight of the Kia, Officer Good saw it driving west at "a very high rate of speed" on 21st Street. As Officer Good was activating his lights and sirens to pursue the Kia, Johnson lost control of the Kia and struck an oncoming vehicle. The airbag control module on the Kia indicated it was traveling 87 miles per hour five seconds prior to the crash.

After the crash, Johnson and Root got out of the Kia. Upon checking the vehicle for other passengers, officers located an unresponsive third person in the back passenger seat. The third person was pronounced dead at the scene.

The State charged Johnson for felony murder based on felony fleeing or attempting to elude a police officer, reckless second-degree murder, felony fleeing or attempting to elude a police officer, and aggravated robbery. The jury convicted Johnson of all charges.

The court merged the felony murder and reckless-second degree murder convictions upon the State's request. It sentenced Johnson to a hard 25 for the felony murder conviction, a consecutive 94 months for the aggravated robbery conviction, and a concurrent 6 months for the felony fleeing or attempting to elude conviction. The court imposed $7,500 in agreed-upon restitution to Kyle Sutton and $100 in attorney fees.

Johnson appeals his convictions for felony murder and felony fleeing or attempting to elude a police officer and the order for attorney fees.

ANALYSIS

*There was sufficient evidence to support Johnson's convictions for felony fleeing or attempting to elude a police officer and felony murder.*

Johnson argues the evidence was insufficient to support the felony fleeing or attempting to elude conviction and, consequently, the felony murder conviction that rested upon that felony.

In considering whether evidence was sufficient to support a conviction, we review all evidence in a light most favorable to the State and determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh the evidence or assess credibility. *State v. Barnes*, 320 Kan. 147, 177, 563 P.3d 1255 (2025).

K.S.A. 2019 Supp. 8-1568 criminalizes fleeing or attempting to elude a police officer. Misdemeanor fleeing or attempting to elude occurs when a driver "willfully fails or refuses to bring such driver's vehicle to a stop for a pursuing police vehicle or police bicycle, when given visual or audible signal to bring the vehicle to a stop." K.S.A. 2019 Supp. 8-1568(a)(1)(B).

The crime is elevated to a felony if the driver "commits any of the following during a police pursuit":

> "(A) Fails to stop for a police road block;
> (B) drives around tire deflating devices placed by a police officer;

4

(C) engages in reckless driving as defined by K.S.A. 8-1566, and amendments thereto;

(D) is involved in any motor vehicle accident or intentionally causes damage to property; or

(E) commits five or more moving violations." K.S.A. 2019 Supp. 8-1568(b)(1).

The State charged Johnson with the felony version of the crime, alleging he drove recklessly and was involved in an accident during the police pursuit.

Johnson concedes there was evidence to support all the elements of felony fleeing or attempting to elude individually. But he asserts that the reckless driving or accident had to occur during the police pursuit to support a conviction, and both occurred after Officer Scott ended his pursuit and before Officer Good began a pursuit. Johnson points to Officer Scott's testimony that, per department policy, when he lost sight of the vehicle, he turned off his lights and sirens and stopped chasing it. When the prosecutor asked him to clarify that he was still pursuing the car, just without lights and sirens, Officer Scott replied, "No, I was driving the normal speed limit without pursuing the vehicle."

The State acknowledges this testimony, but it argues this does not necessarily mean there was no pursuit as a matter of law under K.S.A. 2019 Supp. 8-1568(b)(1). The State claims Officer Scott was still in pursuit after he turned off his lights and sirens because he continued driving in the same direction as Johnson in an effort to locate and apprehend him.

We recently examined the meaning of "pursuit" in *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025). There, the defendant was convicted of felony fleeing or attempting to elude when he fled from a pursuing officer but did not crash his vehicle until after the officer slowed down and turned off their lights and sirens in response to another officer's directive to end the pursuit. On appeal, Ervin argued the district court should have defined "pursuit" for the jury and proposed the following definition: "'[T]he act of

5

chasing to overtake or apprehend. Following is not chasing to overtake or apprehend. If the officer turned the emergency lights and siren off, he was not in pursuit when the motor vehicle accident occurred.'" *Ervin*, 320 Kan. at 298. We held the district court made no error because the word "pursuit" has a common meaning. And we rejected Ervin's proposed definition of the term because it "did much more than simply define pursuit;" it "added points to bolster [Ervin's position]" by dictating that "following is not chasing to overtake or apprehend" and "'if the officer turned the emergency lights and siren off, he was not in pursuit . . . .'" *Ervin*, 320 Kan. at 300.

Our *Ervin* opinion makes clear that whether a pursuit was occurring is a question for the jury. Moreover, the cessation of lights and sirens in a high-speed chase does not end a pursuit as a matter of law for purposes of K.S.A. 2019 Supp. 8-1568. It may support an argument that a pursuit ended, but it does not necessarily settle the matter.

In this case, while Officer Scott turned off his lights and sirens, he continued driving in the same direction as Johnson had fled in an effort to locate, overtake, and apprehend him. Only seconds later, and seemingly the same moment that Officer Good began a second pursuit, Johnson crashed. In contrast, officers in *Ervin* turned off their lights and sirens because other officers had apprehended their main suspect and were no longer looking for Ervin to stop him. They were turning around when Ervin crashed.

Viewed in a light most favorable to the State, the evidence here was sufficient for a reasonable juror to conclude there was still a police pursuit at the time of the accident.

Given this holding, we need not address the State's alternative argument that there was sufficient evidence to support the conviction even if Officer Scott's pursuit ended when he turned off his lights and sirens because Johnson was driving recklessly during the initial moments of the pursuit.

6

Our holding also resolves Johnson's claim that there was insufficient evidence of felony murder. Because there was evidence to support the underlying felony, and the killing occurred during the commission of that felony, there was sufficient evidence to support Johnson's conviction for felony murder. See K.S.A. 21-5402(a)(2) (Felony murder is "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony."); K.S.A. 21-5402(c)(1)(R) (defining felony fleeing or attempting to elude as inherently dangerous felony for purposes of felony murder).

*The jury instructions were not clearly erroneous.*

Johnson argues the court made two instructional errors requiring reversal of his conviction for felony fleeing or attempting to elude. We address each in turn.

In reviewing claims of instructional error, we first consider any bars to appellate jurisdiction and whether the issue was preserved for review. We then review de novo whether the given or omitted instruction was legally and factually appropriate and, if there was any error, whether the error requires reversal of the conviction. *Ervin*, 320 Kan. at 294.

Neither party suggests we lack jurisdiction to consider these instructional claims. Johnson did not present either claim in the district court, so we will reverse his conviction only if an instructional issue was clearly erroneous.

First, Johnson argues the court erred when it did not instruct the jury on the definition of "reckless driving" in the felony fleeing or attempting to elude instruction.

7

The court provided the following jury instruction for that charge:

> "The defendant is charged in Count 3 with fleeing or attempting to elude a police officer. . . . To establish this charge, each of the following claims must be proved:
>
> "1. The defendant was driving a motor vehicle.
> "2. The defendant was given a visual or audible signal by a police officer to bring the motor vehicle to a stop.
> "3. The defendant willfully failed or refused to bring the motor vehicle to a stop for, or otherwise fled or attempted to elude, a pursuing police vehicle.
> "4. The police officer's vehicle, from which the signal to stop was given, was appropriately marked showing it to be an official police vehicle.
> "5. The defendant was involved in a motor vehicle accident or engaged in reckless driving.
> "6. This act occurred on or about the 22nd day of June, 2020, in Shawnee County, Kansas.
>
> "The signal given by the police officer may be by hand, voice, emergency light or siren."

The district court did not define "reckless driving" for the jury, even though it has a statutory definition. K.S.A. 8-1566 defines "reckless driving" as driving a vehicle "in willful or wanton disregard for the safety of persons or property." See K.S.A. 2019 Supp. 8-1568(b)(1)(C) (citing to K.S.A. 8-1566 for definition of "reckless driving").

*Legal appropriateness*

When a party argues an instruction was incomplete or unclear because it lacked a definition, we look beyond whether the omitted definition would have been legally accurate to whether the given instruction *needed* that definition to accurately or clearly reflect the law. See *Ervin*, 320 Kan. at 298-300 (noting that including a definition of

8

"pursuit" in a fleeing or attempting to elude instruction "may have been legally appropriate," but observing there was nothing to suggest the instruction without the definition "is not legally appropriate"); *State v. Z.M.*, 319 Kan. 297, 328, 555 P.3d 190 (2024) (considering whether aiding and abetting instruction, as given, was legally appropriate when defendant argued the instruction should have defined certain terms); see also *State v. Robinson*, 303 Kan. 11, 277, 363 P.3d 875 (2015) (holding additional instructions defining "common scheme" or "course of conduct" in capital murder elements instruction would not have been legally appropriate because the terms do not require definition).

In this line of cases, we have held "[a] trial court need not define every word or phrase in the instructions. It is only when the instructions as a whole would mislead the jury, or cause them to speculate, that additional terms should be defined." *State v. Norris,* 226 Kan. 90, 95, 595 P.2d 1110 (1979). We have explained that "[a] term which is widely used and which is readily comprehensible need not have a defining instruction." *Norris,* 226 Kan. at 95. See also *Robinson*, 303 Kan. at 275-76 (quoting *Norris*); *State v. Armstrong*, 299 Kan. 405, 440, 324 P.3d 1052 (2014) (same); *Z.M.*, 319 Kan. at 328-29 (same).

"Reckless driving" is not a phrase that has so common a meaning it needs no definition. It is a legal term with a codified definition. In cases in which we have held that a word needed no definition, the Legislature had not defined the word in a statute. See *Ervin*, 320 Kan. at 298 ("pursuit," which was not defined by statute, had a common meaning so it needed no definition); *Z.M.*, 319 Kan. at 328-29 ("mental culpability," which was not defined in statute, needed no definition in part because it had a common meaning); *Robinson*, 303 Kan. at 276 ("common scheme" or "course of conduct," which were not defined by statute, needed no definition in part because they had a common usage). That is not the case here.

9

The jury should have been made aware of that definition, rather than being left to define the term on its own. Indeed, the notes in the pattern jury instruction recognize the need for this definition. PIK Crim. 4th 66.110 ("Under circumstances where 'reckless driving' should be defined see K.S.A. 8-1566."). Cf. *Robinson*, 303 Kan. at 277 (lack of definition of "common scheme" or "course of conduct" in statutes or PIK instructions implied the phrases are easily understood and needed no definition).

Because "reckless driving" does not have a common meaning requiring no definition, it would have been legally appropriate to provide the legal definition for the jury.

*Factual appropriateness*

Johnson contends an inquiry into the factual appropriateness of the omitted definition is inapplicable here. We agree. Factual appropriateness generally considers "whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction." *State v. Thille*, 320 Kan. 435, 437, 570 P.3d 18 (2025). But the only question here is whether "reckless driving" needed defining. A factual appropriateness inquiry is unnecessary for this analysis. See *Z.M.*, 319 Kan. at 335 (moving to reversibility analysis after concluding given instructions inaccurately stated the law).

*Reversibility*

To show the failure to provide a definition of reckless driving was clear error, Johnson must firmly convince us the jury would have reached a different verdict if the district court had included that definition in the jury instruction for felony fleeing or attempting to elude a police officer. *Thille*, 320 Kan. at 444.

10

Johnson focuses on his conduct before Officer Scott turned off his lights and sirens. He argues that if the court had defined "reckless driving" for the jury, it would not have found him guilty of such conduct because no juror would consider speeding and running a red light "wanton disregard." He also argues these two moving violations "may . . . not be statutorily sufficient on their own to meet the definition of reckless driving." He argues that, if they were, the Legislature would not have included K.S.A. 2019 Supp. 8-1568(b)(1)(E) in the fleeing or attempt to elude statute, which elevates the misdemeanor offense to a felony if a driver "commits five or more moving violations" during a police pursuit.

Johnson has failed to meet his burden. We have held that there was sufficient evidence for a jury to find that Johnson committed felony fleeing or attempting to elude based on an accident during the police pursuit under K.S.A. 2019 Supp. 8-156(b)(1)(D). Consequently, even if Johnson is correct and the jury would have rejected a claim of reckless driving if it had a definition of the term, he cannot convince us that it would have acquitted him of the charge. The jury may have reasonably rested its conviction on the State's sufficiently supported alternate theory of liability. The failure to provide a definition of reckless driving was not clearly erroneous.

Next, Johnson argues the district court clearly erred when it did not instruct the jury that it could consider misdemeanor fleeing or attempting to elude as a lesser included offense of felony fleeing or attempting to elude.

*Legal appropriateness*

The State agrees that misdemeanor fleeing or attempting to elude is a lesser included offense of felony fleeing or attempting to elude and thus an instruction on the lesser crime would have been legally appropriate. See *State v. Couch*, 317 Kan. 566, 590,

11

533 P.3d 630 (2023) ("jury instructions on lesser-included offenses are generally legally appropriate" and "lesser-included offense includes a lesser degree of the same crime").

*Factual appropriateness*

Generally, an instruction on a lesser-included-offense would have been factually appropriate if "there is some evidence, viewed in a light most favorable to the defendant, emanating from whatever source and proffered by whichever party, that would reasonably justify the defendant's conviction for that lesser included crime." *State v. Berkstresser*, 316 Kan. 597, 601, 520 P.3d 718 (2022). In other words, "the question is whether the court would uphold a conviction for the lesser offense in the face of a challenge to the sufficiency of the evidence." *Couch*, 317 Kan. at 591.

The State agrees there was sufficient evidence of misdemeanor fleeing or attempting to elude and thus an instruction on the crime would have been factually appropriate.

*Reversibility*

The parties disagree on whether the failure to include this instruction was clear error. Johnson argues the jury would have rejected felony fleeing or attempting to elude if it had the option to convict of misdemeanor fleeing or attempting to elude because there was no evidence of reckless driving or an accident during a police pursuit.

Again, Johnson fails to meet his burden. The evidence of an accident during a police pursuit is strong enough that we cannot be clearly convinced the jury would have rejected the felony version of the offense if offered the opportunity. Johnson has not demonstrated the lack of a lesser included offense instruction was clearly erroneous.

12

*Prosecutorial error*

Johnson argues the prosecutor erred by misstating the law regarding felony fleeing or attempting to elude and by inflaming the passions of the jury.

In considering such a claim, we first assess whether the prosecutor committed error by deciding whether the "'acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.'" *State v. J.L.J.*, 318 Kan. 720, 725, 547 P.3d 501 (2024) (quoting *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 [2016]). We have said that the

> "prosecutor has wide latitude in crafting arguments and drawing 'reasonable inferences
> from the evidence but may not comment on facts outside the evidence.' Any argument
> 'must accurately reflect the evidence, accurately state the law, and cannot be "intended to
> inflame the passions or prejudices of the jury or to divert the jury from its duty to decide
> the case based on the evidence and the controlling law."'[Citations omitted.]" *State v.
> Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015).

If we conclude the prosecutor stepped outside this wide latitude, we then consider whether that error prejudiced the defendant's right to a fair trial. *J.L.J.*, 318 Kan. at 725.

Johnson offered no objection at trial to the comments he challenges on appeal, but this poses no preservation problem because the prosecutor made the comments during closing arguments. See *J.L.J.*, 318 Kan. at 726 ("We will generally review claims of prosecutorial error based on comments made during voir dire, opening statements, and closing arguments even without a contemporaneous objection.").

13

*Misstatements of law*

First, Johnson argues the prosecutor misstated the law by conveying to the jury that he could have been committing felony fleeing or attempting to elude even when an officer was not pursuing him. He points to the following comments from the prosecutor's closing and rebuttal:

"His own motivation at that point was to get away. Was to flee and attempt to elude officer Scott. Plain and simple. People can say whatever they want. You see it. That's exactly what happened. Spin it however you want. The video tells you the story. Tells you exactly what happened. This guy's running from the cop.

"He's hightailing it west on 21st Street picking up speed in the Kia Soul, as best as it will go. And we know by the time they got to 21st and Adams, he's pushing almost 90 miles an hour in the Kia Soul, in a 40 mile an hour zone. Over twice the speed limit.

"He's not running from the cops? Sure, he is. He never stopped running from the cops. The minute he saw Officer Scott he took off, he fled, he was eluding him until when? Until he crashed.

. . . .

"Runs that red light. And here comes Officer Scott. No lights. No sirens. He told you once he loses sight of the individual, pursuant to departmental policy, he has to stop that pursuit. He has to cut his lights and sirens. That's a safety issue. And he does that.

"Now does that mean the defendant is no longer fleeing? No. Absolutely not. He is still fleeing. There's nothing in the instruction that requires the pursuit to be continuous until its end. Just that it's initiated and it clearly was.

"Officer Scott is still pursuing the vehicle just without lights and sirens. There goes the defendant picking up speed. And you can see how fast he's traveling cause,

14

here's another civilian traveling the speed limit of 40 miles per hour. And there goes Officer Scott, no lights, no sirens but obviously traveling at a higher rate of speed."

Johnson argues these comments acknowledge that the police pursuit was over as soon as Officer Scott turned off his lights and sirens but misstate the law by arguing Johnson was committing fleeing or attempting to elude after that time and up until the crash.

Johnson mischaracterizes the prosecutor's comments. The State theorized that, while Officer Scott followed protocol and ended his pursuit by deactivating his lights and sirens, this did not end the pursuit for purposes of the felony fleeing or attempting to elude statute. The State took the position that the pursuit continued until the time of the crash. The prosecutor's comments track this position.

Johnson also argues the prosecutor misstated the law by telling the jury that even if Johnson was not committing felony fleeing or attempting to elude at the time of the crash or immediately before, "he was fleeing from that situation." Johnson claims this misstates the law because the State's theory was that Johnson committed fleeing or attempting to elude during the high rate of speed and crash, so he could not be fleeing from that crime at the time it happened.

Again, Johnson mischaracterizes the State's positions. While the State maintained that Johnson was being pursued up until the crash occurred, it argued in the alternative that even if the pursuit ended with the deactivation of lights and sirens, Johnson had already committed felony fleeing or attempting to elude by that time by driving recklessly. The prosecutor's comment conveyed that alternative argument.

We conclude the prosecutor's comments did not misstate the law and, consequently, they were not erroneous.

*Inflaming the passions of the jury*

Next, Johnson argues the prosecutor inflamed the passions of the jury by encouraging members to decide the case based on emotion.

A prosecutor may not invite "the jury to rely on considerations outside the record . . . ." *State v. Thomas*, 311 Kan. 905, 910, 468 P.3d 323 (2020). This is "because the jury's fundamental task is to decide a case based on a calm and dispassionate consideration of the evidence and controlling law." *Thomas*, 311 Kan. at 910. "Thus, a prosecutor's comments are improper if they encourage jurors to consider emotions, passions, or prejudices as a basis for their verdict . . . ." *Thomas*, 311 Kan. at 910.

Johnson claims the following comments encouraged the jury to make a decision that would hold Johnson responsible for the death that occurred regardless of whether the facts and law showed his guilt:

> "Crimes were committed and it's time to hold people accountable. Jayden Root will have his day, but today, this week, it's the defendant's day.
>
> . . . .
>
> "To have some idea of where this Jayden Root may live, they start doing what cops do. Looking for the bad guys.
> . . . .
>
> "Yeah, this is a horrible accident, but there's a criminal component to it. And someone needs to be held responsible for it. And it's the defendant.
> . . . .
>
> "The defense tells you, well, we're not trying to say he's not responsible for something. We'll fall on a smaller sword. Not enough, ladies and gentlemen. Not enough

16

for what he did. Not enough. First degree murder. Second degree reckless murder. Absolutely, 'cause the evidence supports it."

These comments did not fall outside the prosecutor's wide latitude to make their case. We have held that a prosecutor may not encourage the jury "to convict based on a duty to protect the community" or to send a message to the community. *State v. Buck-Schrag*, 312 Kan. 540, 544, 477 P.3d 1013 (2020); see, e.g., *State v. Finley*, 268 Kan. 557, 998 P.2d 95 (2000) (error to tell jury it had to find defendant guilty because "'[w]e cannot tolerate this kind of drug use in our community, especially when a person dies'"). But comments that direct a jury to hold the defendant responsible for their actions are not the same as comments directing the jury to protect or send a message to the community. And the former have been held to lie within the bounds of the law. In *State v. Finley*, 273 Kan. 237, 244, 42 P.3d 723 (2002), this court explained "comments asking the jury not to let the defendant get away with the crime is in most instances permissible comment." See also *State v. Cravatt*, 267 Kan. 314, 335, 979 P.2d 679 (1999) (prosecutor did not err in telling jury, "'Don't let him get away with it,'" because this just asked the jury to seriously consider nature of defendant's actions).

Here, the prosecutor's comments regarding accountability were like those in *Finley* and *Cravatt* and simply asked the jury to hold Johnson accountable for his guilt based on the law and the facts. The comment asking the jury to reject a lesser crime for a greater one explicitly tied this request to the evidence. And two of the other comments Johnson highlights were offered right before or after the prosecutor, again, referenced the facts before the jury.

The remaining comment that Johnson calls error informed the jury that after the report of robbery, officers were looking for "bad guys." Presumably, Johnson believes this comment encouraged the jury to see Johnson as a "bad guy" that should be convicted regardless of the evidence. But this was a fleeting comment that the prosecutor offered in

his description of the facts, not when encouraging the jury to find Johnson guilty. Johnson offers no support for his position that this oblique reference to officers looking for "bad guys" encouraged the jury to convict Johnson based on material outside the record. He fails to show it was error.

Because we hold Johnson has failed to show the prosecutor committed error, the prejudice prong of prosecutorial error analysis is inapplicable.

*Cumulative error*

Johnson argues that if the instructional and prosecutorial errors do not individually warrant reversal, their cumulative effect denied him a fair trial and require reversal of his convictions for felony fleeing or attempting to elude and felony murder.

When the totality of the circumstances shows that individually harmless errors, when considered together, substantially prejudiced the defendant's right to a fair trial, we will reverse a conviction. *State v. Showalter*, 318 Kan. 338, 364, 543 P.3d 508 (2024). If any of the errors were constitutional in nature, we must be convinced of the prejudice beyond a reasonable doubt. *State v. Thomas*, 311 Kan. 905, 914, 468 P.3d 323 (2020). If none or only a single error exists, the cumulative error doctrine is inapplicable. *Showalter*, 318 Kan. at 364. Unpreserved instructional issues that were not clearly erroneous are not considered in a cumulative error analysis. *State v. Waldschmidt*, 318 Kan. 633, 546 P.3d 716 (2024).

We have concluded the trial suffered two unpreserved instructional issues that were not clearly erroneous. Under *Waldschmidt*, the cumulative error doctrine is inapplicable.

18

Johnson acknowledges *Waldschmidt* and asks us to overturn it. In accordance with the rules of stare decisis, we will overturn precedent only if we are "clearly convinced a rule of law established in [] earlier cases '"was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent."'" *State v. Clark*, 313 Kan. 556, 565, 486 P.3d 591 (2021).

Johnson offers a statutory and constitutional argument regarding why *Waldschmidt* was wrong, but he fails to explain why more good than harm would come from overturning that case. Consequently, he has waived the argument by failing to properly brief it and we decline his invitation to overturn *Waldschmidt*. See *State v. Bentley*, 317 Kan. 222, 231, 526 P.3d 1060 (2023) (declining to review request to overturn precedent when party failed to argue why more good than harm would come from it).

Because we have identified only unpreserved instructional errors, the cumulative error doctrine is inapplicable, and Johnson's claim fails.

*Specific vs. general offense*

The State charged Johnson with separate counts of felony murder and second-degree reckless murder. The jury convicted Johnson of both charges. Before sentencing, the State filed a motion requesting the court merge the second-degree murder conviction with the felony murder conviction. The court agreed, merged the convictions, and sentenced Johnson for only felony murder.

On appeal, Johnson argues that the court should have sentenced him for reckless second-degree murder instead of felony murder under K.S.A. 21-5109(a), because the former is the more specific offense.

Johnson did not present this argument in the district court, but he asserts this is immaterial because he is challenging his sentence, which he can do at any time. We agree and thus reach his sentencing argument for the first time on appeal. See K.S.A. 22-3504 (court may review illegal sentence at any time, and illegal sentence includes sentence that does not comport with applicable statute).

Johnson asks this court to review whether his sentence is illegal because it fails to comply with statutory requirements. This is a question of law that requires de novo review. *State v. Newman-Caddell*, 317 Kan. 251, 258-59, 527 P.3d 911 (2023). To the extent we must interpret the statute, "legislative intent controls." *Newman-Caddell*, 317 Kan. at 259. "When the statutory language is plain and unambiguous, we apply the language as written." *Newman-Caddell*, 317 Kan. at 259. We turn to "other sources, such as legislative history, canons of construction, and background considerations" only when the language is ambiguous. *Newman-Caddell*, 317 Kan. at 259.

Sometimes, a defendant's conduct violates more than one criminal statute. In that case, K.S.A. 21-5109(a) permits the State to charge and convict the defendant of multiple crimes. It provides:

> "(a) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment."

But this statute places limits on that discretion. Johnson advances his claim under one of those limitations, set out in subsection (d):

> "(d) Unless otherwise provided by law, when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct, the defendant:

(1) May not be convicted of the two crimes based upon the same conduct; and

(2) shall be sentenced according to the terms of the more specific crime." K.S.A. 21-5109(d).

K.S.A. 21-5109(d) was enacted in 2010 and was meant to codify the "general versus specific doctrine" present in Kansas caselaw. See *State v. Ruiz*, 317 Kan. 669, 681, 538 P.3d 828 (2023) (citing legislative history in support of observation that provision was meant to codify Kansas caselaw). In *State v. Euler*, 314 Kan. 391, 396, 499 P.3d 448 (2021), we observed that the general versus specific doctrine "has questionable applicability and sketchy origins in our caselaw." Nonetheless, the Legislature has fixed this rule in the law.

Johnson argues reckless second-degree murder is a more specific offense than felony murder because felony murder does not require any culpable mental state with regard to the killing, but "for second-degree reckless murder, the death is directly linked to the culpable mental state."

Johnson's argument ignores the plain language of the statute. The provision applies "when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct . . . ." K.S.A. 21-5109(d). This indicates that a statute describes a crime that is more specific than another only if it prohibits identical conduct plus an additional, specifying element.

Felony murder is "the killing of a human being committed . . . in the commission of, attempt to commit, or flight from any inherently dangerous felony." K.S.A. 21-5402(a)(2). Reckless second-degree murder is "the killing of a human being committed . . . unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-5403(a)(2).

21

The statute criminalizing reckless second-degree murder does not prohibit a more specific instance of felony murder. In other words, it is not a more specific way to kill someone while committing, attempting, or fleeing from an inherently dangerous felony. Rather, each crime criminalizes a *different* way to kill someone. This means K.S.A. 21-5109(d) is inapplicable. The few cases that have applied this statute support this conclusion.

In *State v. Alston*, 318 Kan. 979, 988, 551 P.3d 116 (2024), this court concluded that K.S.A. 21-5109(d) is inapplicable to first-degree murder under an aiding and abetting theory and conspiracy to commit first-degree murder because they consist of "different conduct." We explained "[n]either [offense] is more general nor more specific than the other because each targets a different theory of liability." 318 Kan. at 988. See also *State v. Stohs*, 63 Kan. App. 2d 500, 506, 531 P.3d 533 (2023) (interference with a law enforcement officer not more specific crime than felony identity theft because "identity theft prohibits different conduct" from interference with a law enforcement officer); *State v. Casteel*, No. 127,236, 2025 WL 1671998, at *4 (Kan. App. 2025) (unpublished opinion) (attempted voluntary manslaughter not more specific than aggravated battery because "statutes are aimed at different conduct and require entirely different elements of proof"); *State v. Jackson,* No. 127,841, 2025 WL 2427732, at *3 (Kan. App. 2025) (unpublished opinion) (battery on a corrections officer not more specific than aggravated battery because "[a]ggravated battery does not prohibit the same conduct as battery on a corrections officer").

Caselaw that applied the specific versus general offense doctrine before its codification also supports our conclusion. These cases generally held that a crime was not more specific than another if they prohibited different conduct. See *State v. Helms*, 242 Kan. 511, 513, 748 P.2d 425 (1988) (indecent liberties with a child is not a more specific offense than rape even if it applied to a specific victim because rape included an element not present in the indecent liberties statute); *State v. Hudgins*, 301 Kan. 629, 653, 346

22

P.3d 1062 (2015) (DUI manslaughter not more specific than felony murder even if it had to be committed by specific class of offenders, i.e. those who were intoxicated, because it did not prohibit conduct identical to felony murder); *State v. Williams*, 250 Kan. 730, 736-37, 829 P.2d 892 (1992) (holding aggravated incest a more specific offense than indecent liberties with a child because aggravated incest prohibited identical conduct plus an additional element—a specific victim); *State v. Toothman*, 310 Kan. 542, 550, 448 P.3d 1039 (2019) (modified version of aggravated incest not more specific than aggravated criminal sodomy or rape because modified version criminalizes otherwise lawful conduct, and aggravated criminal sodomy and rape are not otherwise lawful conduct).

Because neither reckless second-degree murder nor felony murder criminalizes a more specific version of the other crime, K.S.A. 21-5109(d) is inapplicable and Johnson's claim fails.

*Attorney fees*

Johnson argues the district court erred when it ordered him to pay $100 in attorney fees.

*Preservation*

Johnson requested the district court waive all attorney fees. The State does not contest this as adequate preservation for appellate review.

We "perform an unlimited review of whether a district court comported with statutes governing the assessment of attorney fees." *Buck-Schrag*, 312 Kan. at 555. We review the amount the district court imposed for an abuse of discretion. *Buck-Schrag*, 312 Kan. at 555.

23

K.S.A. 22-4513(a) requires that, if convicted, a defendant reimburse the Board of Indigents' Defense Services (BIDS) for expenses it incurred in providing representation. It instructs the court to consider the financial resources of the defendant in calculating the order, providing: "In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b).

We have held that this consideration must be explicit, meaning the court must state on the record how the defendant's financial resources and the nature of that burden factored into the court's decision. This is because, "without an adequate record on these points, meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees would be impossible." *Robinson*, 281 Kan. at 546.

In this case, the State requested $10,225 in attorney fees. The district court imposed only $100 of that request. It explained its order as follows:

> "I am going to find today though, that Mr. Johnson, because you are facing a—an extremely long period of incarceration, possibly life, that you—it would pose a manifest hardship upon you to assess all costs and fees in this case. I understand you'll have an opportunity to earn some income in prison, and so I will assess some costs and fees, but I'm going to make some large adjustments as it relates to those costs and fees going forward in the case.

> "The PSI suggests costs and fees be assessed in the amount of—it shows $202 as court costs, including the surcharge. I believe it's—for a case of this nature, that is correct. So the docket fee would be $180. And—or excuse me $180.50. That is assessed. And the $22 surcharge is assessed as well, for a total of $202.50.

> "The DNA database fee is assessed in the amount of $200, unless previously paid.

"The court's going to find today that the BIDS attorney fee and application fee will be adjusted. The application fee is $100. The court is assessing $100 in BIDS attorney fees."

This consideration satisfied the court's responsibility under the statute. We held a district court properly considered a defendant's resources and the burden that fees would impose when it utilized similar reasoning in *Buck-Schrag*. There, the court imposed $7,000 in attorney fees after noting that the defendant was "'able-bodied'" and "'employable'" and would be "'given a job within the prison system.'" *Buck-Schrag*, 312 Kan. at 555. It ruled the $7,000 sum was reasonable, "'recognizing resources'" and "'recognizing burden.'" 312 Kan. at 555. Contrast *Buck-Schrag,* 312 Kan. at 540, with *State v. Huggins*, 319 Kan. 358, 376, 554 P.3d 661 (2024) (vacating attorney fees when court imposed fees without any consideration).

Like in *Buck-Schrag*, the court here observed that Johnson would likely have a job in prison so would have access to some financial resources. But given the other fees and the lengthy prison sentence he faced, the court nonetheless concluded the requested attorney fees would cause a manifest hardship on Johnson and thus waived nearly the entire sum.

The district court properly followed the procedure outlined in K.S.A. 22-4513(b). We affirm its order for $100 in attorney fees.

Johnson's convictions, his sentence, and the order for attorney fees are affirmed.

Affirmed.